CAFE GALLERY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DIAMOND CASINO, INC., A CORPORATION OF THE STATE OF NEW JERSEY, T/A LONDONSHIRE HOUSE; CARUGNO, INC., A CORPORATION OF THE STATE OF NEW JERSEY, T/A ARTHUR'S HOUSE OF FINE FOODS; AND THE CITY OF BURLINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS, v. STATE OF NEW JERSEY, BY THE DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, JOSEPH A. LERNER, AS DIRECTOR OF THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL, AND JOHN DOE, CONSTITUTING ANY UNNAMED OR UNKNOWN ENFORCEMENT AGENTS FOR THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL, CHIEF CLAYTON, CHIEF OF THE POLICE DEPARTMENT OF THE CITY OF BURLINGTON, AND XYZ CORPORATION AND JOHN SMITH, REPRESENTING THE NAMES OF ALL OTHER PLENARY RETAIL CONSUMPTION LICENSEES WITHIN THE CITY OF BURLINGTON, MORE PARTICULARLY DESCRIBED ON EXHIBIT ARE MADE A PARTY TO THIS ACTION AS A CLASS REPRESENTING LICENSEES NOT ENTITLED TO OPEN ON SUNDAY WITHIN THE CITY OF BURLINGTON, DEFENDANTS.

Superior Court of New Jersey
Law Division
Burlington County

Decided May 6, 1982.

*Frederick W. Hardt* for plaintiffs (*Sever & Hardt,* attorneys).

*Barbara A. Harned,* Deputy Attorney General, for Director of Alcoholic Beverage Control (*Irwin I. Kimmelman,* Attorney General, attorney).

*Louis A. Colaguori* for defendants licensees (*Bookbinder & Colaguori,* attorneys).

HAINES, A.J.S.C.

Plaintiffs are holders of plenary retail consumption liquor licenses issued by the City of Burlington. All of them, except the city, operate restaurants and sell liquor on Sundays. Some have done so since 1970 when the city, following a favorable vote on a referendum submitted to the voters of the city, adopted an ordinance permitting such sales. The question placed on the ballot read as follows:

> Shall the sale of alcoholic beverages, at retail, be permitted in the City of Burlington and bona fide restaurants having a minimum of seventy-five (75) seats in the dining room and/or bar room, exclusive of seats at the public bar, between the hours of 1:00 p.m. and 10:00 p.m. Sunday, in addition to the hours of sale now permitted under the present ordinance?

Before this question was submitted to the voters it was shown to an unidentified person in the Division of Alcoholic Beverage Control (ABC) and modified in accordance with his suggestions. The city's ordinance carrying out the provisions of the referendum was sent to the ABC Director for approval. He wrote to the City Clerk of Burlington City on February 2, 1970 as follows:

> It is now noted that prior to the adoption of the amendment, a referendum was held at the 1969 General Election on the question (pursuant to RS 33:1-47.1) whether such sale should be permitted in addition to the then existing Sunday hours and that the question received 1832 Yes votes and 1235 No votes.

Accordingly, there is no conflict between the amendatory ordinance and the previous referenda in 1949 and 1962.

To the extent that the ordinance requires the Director's approval, pursuant to RS 33:1–40, such approval is granted.

Since 1969 regular renewals of restaurant owners' licenses have occurred. Some have been transferred. Substantial monies were spent by at least one of the plaintiffs in partial reliance upon the ability to sell alcoholic beverages during restaurant hours on Sundays.

On February 3, 1981 the ABC Deputy Director wrote to Burlington's Chief of Police and advised him that the Sunday sales ordinance of the city was not lawful for two reasons: (1) the public question submitted to the voters on November 4, 1969 did not conform to the wording required by *N.J.S.A.* 33:1–47, namely, "Shall the sale of alcoholic beverages be permitted on Sundays, in this municipality?" and (2) the restaurant require-ment was discriminatory because it permitted Sunday sales by some holders of plenary retail consumption licenses, *i.e.,* those operating restaurants, while denying that privilege to other holders of the same class of license. On May 20, 1981 the ABC Director advised the City Solicitor that "no licensee in the City of Burlington may sell alcoholic beverages on Sunday." The city and three of the four affected restaurants appealed this decision to the Appellate Division, which restrained its enforce-ment. The Director's decision was then withdrawn and the appeal dismissed. The parties agreed that no enforcement ac-tion would be taken until the matter was presented to and determined by a trial court. It has been submitted for determi-nation here on the record with briefs.

## The City's Referenda

The city has submitted the question of Sunday sales to its voters, in differing versions, on five occasions since 1949. The years, the questions and the results are as follows:

| | | Result |
|---|---|---|
| 1949: | Shall the sale of alcoholic beverages be permitted on Sundays in this municipality? | Negative |

1957: Shall the sale of alcoholic beverages be permitted in this municipality on Sundays, between the hours of 12:01 A.M. and 2:00 A.M.?    Negative

1962: Shall the sale of alcoholic beverages at retail be permitted in the City of Burlington on Sundays between midnight Saturday and 2:00 A.M. Sunday in addition to the weekday hours of sale now permitted under the present ordinance?    Negative

1969: Shall the sale of alcoholic beverages, at retail, be permitted in the City of Burlington in bona fide restaurants have a minimum of seventy-five (75) seats in the dining-room and/or bar room exclusive of the seats at the public bar between the hours of 1:00 P.M. and 10:00 P.M., Sunday, in addition to the hours of sale now permitted under the present ordinance?    Affirmative

1981 (a non-binding referendum):

Shall the sale of alcoholic beverages be permitted on Sundays in this municipality between the hours of 1 P.M. and 12 midnight, in addition to the present hours of 12 midnight and 2 A.M.?    Affirmative

---

The question submitted in 1949 contained the exact language required by *N.J.S.A.* 33:1–47. That statute provides in part:

If a majority of the legal voters voting on the question shall vote "No" . . . it shall be unlawful for any person to sell alcoholic beverages in such municipality on Sundays and such sale shall constitute a violation of this chapter.

The statute also provides that no further referendum on the same question may be held for five years and that "so long as such referendum remains effective, all ordinances, resolutions or regulations inconsistent with the result of such referendum shall have no effect within such municipality."

     It is apparent that none of the questions submitted to the voters after 1949 contained the wording required by *N.J.S.A.* 33:1–47. Consequently, they were completely ineffective unless,

as argued by plaintiffs, they were permissible under the provisions of *N.J.S.A.* 33:1–47.1. I reach the conclusion that they were not. *N.J.S.A.* 33:1–47 authorizes a referendum fixing the hours between which the sale of alcoholic beverages may be made on weekdays and Sundays. It deals with hours and *only* with hours. It says so. It refers to "a referendum on any proposed questions as to [how] *the hours* between which the sale of alcoholic beverages at retail may be made in such municipality on weekdays, Sundays, either or both, shall be fixed . . . ." (emphasis supplied). The legislative scheme provides three methods of control over Sunday sales. Under *N.J.S.A.* 33:1–40 the governing body of a municipality is given the power to decide whether *any* such sales shall be permitted, and, if so, the further power to fix the hours of sale. Under *N.J.S.A.* 33:1–47 the question of whether there shall be *any* Sunday sales may be submitted to the electorate. When that is done, the power to decide the issue passes forever to the public. Section 47, however, does not deal with hours. If a favorable vote is recorded in a § 47 referendum, the hours of sale must be fixed by the governing body. It is only when a question is submitted under *N.J.S.A.* 33:1–47.1 that the public acquires power to fix hours of sale. That is the purpose of 47.1. This conclusion is emphasized by the different results obtaining after a negative referendum result under the two sections of the statute. Under § 47 a negative response thereafter prohibits any Sunday sales in the municipality, absent a new referendum in not less than five years, while § 47.1, in the case of a negative response, merely provides that "thereafter the hours between which the sale of alcoholic beverages at retail may be made may be regulated as theretofore in such municipality," thus leaving control in the governing body.

The conclusion is also emphasized by the statutory direction regarding the effect of an affirmative vote on a referendum. Section 47 provides that thereafter "the sale of alcoholic beverages on Sundays . . . shall be permitted. . . ." Section 47.1, however, provides that ". . . thereafter the retail sale of alcohol-

ic beverages may be made only within the hours fixed by such referendum." Finally, the explanatory statement required by 47.1 clearly limits the question presented to one involving hours. It provides: "A 'yes' is a vote to permit sales only within the hours set forth in the question or questions printed above. A 'no' vote is a vote against changing the hours during which sales of alcoholic beverages are now permitted in this municipality. . . ."

■ Even if the meaning of § 47.1 were stretched to permit a referendum on the question of whether sales between stated hours should be permitted on Sundays, when none has been permitted before, plaintiffs would not succeed. The statute provides that the questions "be specifically and separately set forth in the petition." They would then appear separately on the ballot. Thus, the question of whether there should be *any* Sunday sales in the municipality would have to be set forth as one question and the hours of sale as another. This was not done in 1957, 1962, 1969 or 1981. The 1969 ballot contained more than two questions but stated them as one. Further, the restaurant condition is not authorized by any provision of § 47.1.

## Estoppel

Plaintiffs, or some of them, have relied upon the 1969 referendum, the 1970 ordinance and the 1970 letter issued by the ABC Director for over 11 years. It is apparent that they have changed their position as a result of that reliance. They therefore argue that the city and the Division are estopped from denying the validity of the 1969 referendum and ordinance. The proposition has obvious appeal. Innocent people with substantial investments at stake have been misled. Nevertheless, their argument cannot be sustained.

■ The concept of estoppel may not be used when the effect is to authorize an action which is "ultra vires" or "void" in a primary sense. *Summer Cottagers Ass'n v. Cape May,* 19 *N.J.* 493, 504 (19–5); *Zahodiakin Engineering Corp. v. Summit Zon-*

*ing Bd. of Adj.,* 8 *N.J.* 386 (1952). In the latter case the court said:

> Thus, for want of jurisdiction of the subject matter, the resolution purporting to authorize the exception was utterly void and subject to collateral attack at any time as well as a direct review within the time prescribed by law ... The want of fundamental power cannot be indirectly supplied by the application of the doctrine of estoppel in pais ... The public has an interest in zoning that cannot thus be set at naught. [at 395]

The concept has been used when jurisdiction was present but misused. This is illustrated by building permit cases in which permits were honored, though issued as the result of mistaken interpretations of ordinances. Those cases are analyzed in *Trenkamp v. Burlington Tp.,* 170 *N.J.Super.* 251 (App.Div.1979), a case which also points out (at 271) that when the issued permit is void it is subject to collateral attack *at any time.* The City Council for the City of Burlington had authority under *N.J.S.A.* 33:1–40 to regulate the Sunday sale of alcoholic beverages, *provided* that no referendum was submitted under *N.J.S.A.* 33:1–47. When that happened in 1949, control over Sunday sales passed to the voters. Only they could change the 1949 prohibition against Sunday sales. Thus, all later ordinances adopted by the city, all of which were responded to unlawful referenda, were void. The adoption of the 1969 ordinance, upon which plaintiffs rely, was not merely an irregular exercise of power which the city possessed; it had no power. There can be no estoppel. Nor can the ABC be estopped. Its letter approved a void ordinance and provides no basis for breathing life, indirectly, into that legislation.

### Relief

My conclusions are distasteful. They provide no avenue of escape for innocent parties adversely affected by governmental error. This is wrong. Equity will not suffer a wrong without a remedy. *Crane v. Bielski,* 15 *N.J.* 342 (1954). It is clear that plaintiffs should be given an opportunity to preserve their positions. The effective date of this decision will therefore be delayed until after the November 1982 election. This will

provide plaintiffs with the opportunity to submit the question of Sunday sales (in any form authorized by law) to the voters at that election. Notwithstanding reliance upon the 1969 referendum and ordinance, they have always been subject, after 1974 (five years after the 1969 election), to the adoption of a negative referendum which would have denied further Sunday sales. Consequently, their subjection to the hazard of a referendum is not inequitable. The opportunity provided for a referendum favorable to them does equity. The technique is not without precedent. *Robinson v. Cahill*, 118 *N.J.Super.* 223 (Law Div. 1972), aff'd 62 *N.J.* 473 (1973); *Switz v. Middletown Tp.*, 23 *N.J.* 580 (1957).