189 N.J. Super. 468 (1983)
460 A.2d 227
CAFE GALLERY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DIAMOND CASINO, INC., A CORPORATION OF THE STATE OF NEW JERSEY T/A LONDONSHIRE HOUSE, CARUGNO, INC., A CORPORATION OF THE STATE OF NEW JERSEY, T/A ARTHUR'S HOUSE OF FINE FOODS, AND THE CITY OF BURLINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
STATE OF NEW JERSEY, BY THE DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, JOSEPH A. LERNER, AS DIRECTOR OF THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL, AND JOHN DOE, CONSTITUTING ANY UNNAMED OR UNKNOWN ENFORCEMENT AGENTS FOR THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL, CHIEF CLAYTON, CHIEF OF THE POLICE DEPARTMENT OF THE CITY OF BURLINGTON, AND XYZ CORPORATION AND JOHN SMITH, REPRESENTING THE NAMES OF ALL OTHER PLENARY RETAIL CONSUMPTION LICENSEES WITHIN THE CITY OF BURLINGTON, MORE PARTICULARLY DESCRIBED ON EXHIBIT ARE MADE A PARTY TO THIS ACTION AS A CLASS REPRESENTING LICENSEES NOT ENTITLED TO OPEN ON SUNDAY WITHIN THE CITY OF BURLINGTON, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided March 25, 1983.
*471 Frederick W. Hardt, for plaintiff (Sever & Hardt, attorneys).
Barbara A. Harned, Deputy Attorney General, for Director of Alcoholic Beverage Control (Irwin I. Kimmelman, Attorney General).
Louis A. Colagouri for defendant licensees (Bookbinder & Colagouri, attorneys).
HAINES, A.J.S.C.
The Sunday sale of alcoholic beverages has been a controversial issue in the City of Burlington for many years. In Cafe Gallery v. Burlington, 186 N.J. Super. 189 (Law Div. 1982), this court recognized the validity of a 1949 city referendum prohibiting such sales, while striking down five subsequent referenda on the same subject. The effect of the decision was to prevent the sale of alcoholic beverages in Burlington's restaurants, otherwise permitted for 11 years by referenda, ordinance and the Division of Alcoholic Beverage Control. The effect of the decision was postponed to permit submission of new referenda in the November 1982 election. New referenda were submitted accordingly. *472 If adopted, they would have permitted Sunday sales in the city by all licensees, whether or not operating restaurants. The referenda were defeated, apparently continuing the Sunday sales prohibition. Shortly before the election, however, Senate Bill 1645, a special law, L. 1982, c. 147, became effective. It applied only to the City of Burlington, permitting restaurants there to sell alcoholic beverages on Sundays, provided the city adopted an appropriate ordinance. It did so a few days before the election. The results of the referenda were therefore ignored. The Sunday sale of alcoholic beverages in Burlington's restaurants has continued unabated.
Defendant class now challenges the validity of the special law, claiming it violates Due Process and Equal Protection Clauses of our State and Federal Constitutions. It also argues that (1) the city's ordinance authorizing the petition which requested the Legislature to enact a special law was ultra vires and (2) the referendum provisions of our Alcoholic Beverage Law prevail over the provisions of the special law. Finally, the class challenges the validity of the 1982 referenda.
Special legislation is authorized by N.J.Const. (1947), Art. IV, § VII, par. 10, which states:
Upon petition by the governing body of any municipal corporation formed for local government, or of any county, and by vote of two-thirds of all the members of each house, the Legislature may pass private, special or local laws regulating the internal affairs of the municipality or county. The petition shall be authorized in a manner to be prescribed by general law and shall specify the general nature of the law sought to be passed. Such law shall become operative only if it is adopted by ordinance of the governing body of the municipality or county or by vote of the legally qualified voters thereof. The Legislature shall prescribe in such law or by general law the method of adopting such law, and the manner in which the ordinance of adoption may be enacted or the vote taken, as the case may be.
General laws prescribing the method for adopting special legislation have been enacted by the Legislature. They appear in N.J.S.A. 1:6-10 et seq. The city's procedures comply with the statutory provisions.
*473 N.J.S.A. 33:1-47 and 47.1 authorize Sunday sales referenda. The class contends that they take precedence over the special legislation. Its argument is without merit. The Legislature did not intend that result. Its special law was enacted at Burlington's request after the decision in Cafe Gallery v. Burlington, supra, which construed our Sunday sales statutes and threatened an end to such sales in the city's restaurants. The Legislature "is presumed to be familiar with judicial declarations" relating to its own enactments. State v. Federanko, 26 N.J. 119, 129 (1958). When it adopted the special law it must have intended to overcome the consequences of Cafe Gallery and the 1949 referendum. This result would follow only if the existing legislation were made subordinate to the special law. General rules of construction also support this conclusion. Where "a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter, the courts will find a legislative intent to supersede the earlier law." American Fed'n State, Cty. Mun. Emp. v. Hudson Welf. Bd., 141 N.J. Super. 25, 32 (Ch.Div. 1976).
The defense argues also that the city's ordinance, authorizing the petition to the Legislature, was ultra vires. It stresses the provisos in N.J.S.A. 33:1-47 and 47.1 which state that "so long as such referendum [regarding Sunday sales] remains effective, all ordinances, resolutions or regulations inconsistent with the result of such referendum shall have no effect within such municipality." That language cannot be read as contradicting the Constitution, which does not require deference by special laws to existing enactments. Neither does N.J.S.A. 1:6-10 et seq, which establishes procedures for the adoption of special laws. N.J.S.A. 33:1-47 and 47.1, if construed as the defense contends, would conflict with N.J.S.A. 1:6-10 et seq. This is contrary to the principle that statutes should be construed harmoniously. State v. Federanko, supra 26 N.J. at 129. That principle is observed when N.J.S.A. 33:1-47 is interpreted as being subordinate to N.J.S.A. 1:6-10.
*474 The class's constitutional challenges are equally unpersuasive. The courts, particularly trial courts, are very reluctant to reach the conclusion that a statute is unconstitutional. Supermarkets General Corp. v. Sills, 93 N.J. Super. 326 (Ch.Div. 1966). Statutes should be interpreted to reach an opposite result. A strong presumption favors the validity of legislation. Velmohos v. Maren Engineering Corp., 83 N.J. 282 (1980). These rules place a heavy burden upon one who challenges legislation as arbitrary and unreasonable. Orange Taxpayers Council v. Orange, 83 N.J. 246, 256 (1980); Harvey v. Essex Cty., 30 N.J. 381, 388 (1959).
The initial constitutional argument points to the voting rights conferred upon city residents by the Alcoholic Beverage Law's referenda provisions. It is claimed that the importance of the right to vote is so highly considered that any special law removing that right must be unconstitutional. Plainly, this is not so. There is no fundamental constitutional right to a referendum; such right is created only by legislation. Stop the Pay Hikes Comm. v. Irvington, 166 N.J. Super. 197, 208 (Law Div. 1979); Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch.Div. 1969). This is especially true in the case of alcoholic beverages, the regulation of which is within the nearly absolute control of the Legislature. Mazza v. Cavicchia, 15 N.J. 498 (1954). It could, for example, abolish the right to sell such beverages if it wished to do so. Eskridge v. Alcoholic Beverage Control Div., 30 N.J. Super. 472 (App.Div. 1954). Unquestionably, therefore, the Legislature, by special law, could remove or qualify referenda procedures relating to sales of alcoholic beverages without thereby violating any right to vote imbedded in any constitutional principle.
Finally, the class argues that Fourteenth Amendment due process and equal protection violations have occurred because the City of Burlington has been singled out and subjected to a law which does not apply to any other municipality in the State of New Jersey. It could be said in response that this is always *475 one of the effects of special legislation. In fact, however, Burlington's special law was enacted pursuant to general legislation which applies to all municipalities. The city was not treated any differently than other municipalities. Every one of them has the right to petition the Legislature for an identical Sunday sales law if it wishes to do so.
Furthermore, the protection of the Fourteenth Amendment "contemplate[s] persons and classes of persons. It has no respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made." Bowman v. Lewis, 101 U.S. 22, 30, 25 L.Ed. 989 (1880). The Bowman court upheld a Missouri law which permitted appeals from certain circuit courts in the state while denying appeals from others. The court said:
The 14th Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities in the laws and judicial proceedings may exist in the several States without violating the equality clause in the 14th Amendment there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. [101 U.S. at 31, 25 L.Ed. at 992].
Bowman was reaffirmed in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1951). In McGowan the court held that "the equal protection clause relates to equality between persons as such, rather than between areas and ... territorial uniformity is not a constitution prerequisite." Id. 366 U.S. at 427, 81 S.Ct. at 1106. Our own Supreme Court, in State v. Senno, 79 N.J. 216 (1979), upheld a pretrial program which applied to only 5 of 21 counties. It held that the Equal Protection Clause was satisfied so long as each class of defendants *476 within the five counties was treated uniformly and a rational basis existed for the distinction between counties. The rational distinction was found "in the experimental nature of PTI." Id. at 231.
The special legislation may not be set aside "if any stated facts reasonably may be conceived to justify it." McGowan v. Maryland, supra 366 U.S. at 426, 81 S.Ct. at 1105. Here, the Legislature could have decided to promote the business of restaurants on Sundays by permitting them to sell alcoholic beverages. That would be a rational purpose which this court would have to recognize. The Legislature might also conclude, with validity, that persons drinking alcoholic beverages with meals were less likely to become inebriated than those persons drinking in places where meals were not available. It may therefore have adopted the special law in order to contribute additional control over the pernicious influence of alcohol. Many conceivable scenarios support the legislation.

The Validity of the 1982 Referenda
The class also challenges the validity of the 1982 referenda. There is reason to consider that challenge notwithstanding the conclusions reached above. The negative vote recorded affects all nonrestaurant licensees, denying them the right, under N.J.S.A. 33:1-47 and 47.1, to another referendum for five years. It will also affect restaurants if (1) this court's opinion is overturned on appeal, (2) the Legislature repeals the special legislation, or (3) the city repeals the ordinance required to implement the special legislation. The class, therefore, is entitled to know whether the referenda have validity. I conclude that they do not.
The referenda were placed on the ballot by resolution of the city's common council. The resolution responded to petitions, circulated and signed in attempted compliance with N.J.S.A. 33:1-47 and 47.1. It is now claimed that some of the signatures on the petitions were invalid because they were made by persons *477 who were not registered to vote. It is conceded that, if this contention is correct, the valid signatures on the petitions will be less than those required by the statutes.
Initially, it must be decided whether plaintiff's application was filed within time. R. 4:69-6 provides that actions in lieu of prerogative writs must be commenced within 45 days from the date of the accrual of cause of action. Here, the cause of action accrued at the time the city's governing body adopted the ballot resolution, much more than 45 days before the issue was raised in this suit. Consequently, the rule would bar the action unless it may be relaxed, as permitted by R. 4:69-6(c), in the "interest of justice." Such relaxation is permitted when the question presented is one of significant public interest. Schack v. Trimble, 28 N.J. 40, 48 (1958). This issue is of that calibre. The referenda are of considerable public interest and importance in the City of Burlington. The Sunday sales question is very controversial. It has been the subject of six referenda in the city over a period of 33 years. Future problems may arise. Any lingering doubts about the validity of the referenda should be erased. Consequently, the 45-day rule does not bar this action.
N.J.S.A. 33:1-47 and 47.1 require the questioned petitions to be signed by "qualified electors." The class correctly defines these words to mean "registered voters." The opposite claim is that they should be interpreted to mean those persons who are qualified to vote if they were registered. In Mathews v. Atlantic City, 84 N.J. 153, 156, n. 2 (1980), the Supreme Court indicated that the term "qualified elector", by common understanding, means a registered voter. In Johnson v. Reichenstein, 50 N.J. Super. 116, 121-122 (App.Div. 1958), the words "legally qualified voters" and "qualified electors" were held to refer to registered voters. The court said: "[T]his is a desirable result, since it would be extremely impractical to verify nominating petitions if the signers need only to be qualified to register to vote." The same practical difficulty is involved with respect to petitions requesting a referendum. See, also, In re Ross Petition, 116 N.J. Super. 178, 184 (App.Div. 1971).
*478 The signatures of the unregistered petitioner should not have been counted. Consequently, the requisite number of signatures was lacking and the petitions formed no lawful basis for the resolution placing the 1982 referenda on the ballot. Those referenda were therefore of no effect.