264 N.J. Super. 276 (1993)
624 A.2d 613
LAWRENCE WALENSKY AND FLORENCE WALENSKY, PLAINTIFFS-RESPONDENTS,
v.
JONATHAN ROYCE INTERNATIONAL, INC., A NEW JERSEY CORPORATION, JOSEPH F. PURCELL, AN INDIVIDUAL, PURCELL GROUP, INC., A DELAWARE CORPORATION, PURCELL, INC., A NEW JERSEY CORPORATION, HARRY MORALES, INC., A PENNSYLVANIA CORPORATION AND PERSONNEL CONNECTIONS, INC., A TEXAS CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1993.
Decided May 4, 1993.
*277 Before Judges MICHELS, BILDER and BAIME.
John C. Koutsos, of the California Bar, argued the cause for appellants (Rosenbach & Rosenbach and Meyer & Lew, of the California Bar, attorneys; Philip Rosenbach, Jeffrey P. Meyer, of the California Bar, and Mr. Koutsos, of counsel; Mr. Rosenbach and Mr. Koutsos, on the brief).
Russell M. Woods argued the cause for respondents (Woods & Trembulak, attorneys; Mr. Woods, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*278 Defendants Jonathan Royce International, Inc. (Jonathan Royce), Joseph F. Purcell (Purcell), Purcell Group, Inc., Purcell, Inc., Harry Morales, Inc., and Personnel Connections, Inc. appeal from a final judgment and a post-judgment order of the Chancery Division. Initially, they appeal from a final judgment, dated November 12, 1991, that (a) awarded plaintiff Lawrence Walensky damages in the amount of $14,250 against Purcell, Purcell, Inc. and Purcell Group, Inc., jointly and severally; (b) awarded plaintiffs Lawrence Walensky and Florence Walensky damages in the amount of $76,210 against Purcell, Purcell, Inc., and Purcell Group, Inc., jointly and severally; (c) compelled Purcell and/or Purcell, Inc., Purcell Group, Inc. and Personnel Connections, Inc. to issue to plaintiff Lawrence Walensky and plaintiff Florence Walensky stock in the amount necessary to give them, respectively, a 10.75% and a 1.25% interest in Personnel Connections, Inc.; (d) canceled 1575 shares of stock in Purcell Group, Inc. which had been issued in the names of plaintiffs, and declared that said plaintiffs were to have no further interest in that particular entity; (e) dismissed the fourth count of plaintiffs' amended complaint with prejudice and (f) dismissed with prejudice the counterclaims which had been filed by Purcell and Purcell Group, Inc. Secondly, defendants appeal from a post-judgment order, dated December 9, 1991, that denied their motion for reconsideration or, alternatively, for a new trial.
Defendants seek a reversal of the November 12, 1991 judgment and the December 9, 1991 order, contending generally that (1) the trial court erred in permitting plaintiffs to proceed under the Oppressed Minority Shareholder Statute and, furthermore, even thereunder plaintiffs failed to demonstrate that they had been "oppressed" by defendants; (2) neither facts nor law justifies the damages awarded against them and, in fact, equity prohibits such an award; (3) the trial court lacked personal jurisdiction over defendants Personnel Connections, Inc. and Harry Morales, Inc.; (4) plaintiffs misappropriated trade secrets and engaged in unfair competition in connection with their alleged stealing of Jonathan *279 Royce; (5) Purcell Group, Inc. is entitled to $25,000, together with interest, on two promissory notes, and finally (6) they are entitled to an award of counsel fees under the terms of the Oppressed Minority Shareholder Statute.
We are satisfied from our careful study of this matter that there is substantial credible evidence in the record as a whole which reasonably warrants the findings and conclusions of the trial court. Therefore, we discern no sound reason or legal justification for disturbing these findings and conclusions. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). See also R. 2:11-3(e)(1)(A). Additionally, the trial court's denial of defendant's motion for reconsideration or, alternatively, for a new trial certainly did not constitute a manifest denial of justice. R. 2:11-3(e)(1)(C). Beyond this, all of the issues of law raised by defendants are clearly without merit. R. 2:11-3(e)(1)(E). Nevertheless, brief comment with respect to certain of these issues is warranted.
Initially, we note that when a cause of action has been established under the Oppressed Minority Shareholder Statute, and when the remedies provided for in that statute fail to afford the injured party with adequate relief, a court of equity undoubtedly has the authority and flexibility to fashion a remedy, which may include monetary damages, in order to ameliorate the wrong. This result obtains not from the express terms of the statute, but from the long established principle that equity will not suffer a wrong without a remedy. Here, we are thoroughly convinced that, contrary to defendants' claims, plaintiffs demonstrated beyond question that they were entitled to the remedy fashioned by the trial court due to the "oppression" that they had suffered at the hands of defendants while they were minority shareholders of Jonathan Royce. While the Oppressed Minority Shareholder Statute may not provide expressly for the remedy granted, the concerns that that statute seeks to address clearly indicate that *280 plaintiffs, as "oppressed" minority shareholders, were, and are, entitled to protection of their interests. Therefore, the trial court properly employed its broad equity powers in fashioning the remedy that it ultimately arrived at in this case.
The interest owned by a minority shareholder in a closely held corporation is often a precarious one. In fact, it has been characterized by this court as being one of "acute vulnerability." Bostock v. High Tech Elevator Ind., 260 N.J. Super. 432, 443, 616 A.2d 1314 (App.Div. 1992). See also Orchard v. Covelli, 590 F. Supp. 1548, 1557 (W.D.Pa. 1984), appeal dismissed, 791 F.2d 920 (3d Cir.1986). In Bostock, supra, we attributed this vulnerability to principally three factors:
First, based upon its voting power, "the majority is able to dictate to the minority the manner in which the corporation is run." Second, a minority interest in a closed corporation is difficult to value because the shares are not publicly traded and a fair market is often not available. Dissention within a closed corporation makes the minority interest even more undesirable and unattractive. As a consequence, a shareholder challenging the majority in a closed corporation finds himself on the horns of a dilemma; he can neither profitably leave nor safely stay with the corporation. "In reality, the only prospective buyer turns out to be the majority shareholder." Thus, the limited market for the sale of a minority interest makes the minority particularly vulnerable to manipulation and oppression. A third factor is that a closed corporation frequently originates in the context of personal relationships. Often such business entities are formed by family members or friends. Once the personal relationship between shareholders is destroyed, the viability of the business entity generally deteriorates. [260 N.J. Super. at 443-44, 616 A.2d 1314 (citations omitted)].
In light of the vulnerability brought about by these factors, the law "`imposes a fiduciary duty upon the majority requiring it to act with [the] utmost good faith and loyalty in transacting corporate affairs.'" Bostock, supra, 260 N.J. Super. at 444, 616 A.2d 1314 (quoting Orchard v. Covelli, supra, 590 F. Supp. at 1557). In New Jersey, this duty is embodied in the language of N.J.S.A. 14A:12-7, the Oppressed Minority Shareholder Statute. It has been noted that the central focus of this statutory provision is on remedying abuse and oppression against minority shareholders by those in control of closely held corporations. Brenner v. Berkowitz, 261 N.J. Super. 63, 73, 617 A.2d 1225 (App.Div. 1992). See also Berger v. Berger, 249 N.J. Super. 305, 315, 592 A.2d 321 *281 (Ch.Div. 1991). The need for such a statute can be attributed, at least in part, to the fact that traditional principles of corporate law were often unsuccessful at curbing abuses of power by majority interests in closely held corporations. See, e.g., Exadaktilos v. Cinnaminson Realty Co., Inc., 167 N.J. Super. 141, 154, 400 A.2d 554 (Law Div. 1979), aff'd, 173 N.J. Super. 559, 414 A.2d 994 (App.Div.), certif. denied, 85 N.J. 112, 425 A.2d 273 (1980). Therefore, it is clear that plaintiffs, as minority shareholders, were in a position that required legal protection of their interests. While the Oppressed Minority Shareholder Statute afforded them much protection in this regard, it did not cover every possible scenario or situation from which abuse by a majority shareholder could arise. In fact, due to the particularly unusual factual setting of this case, plaintiffs, who had undoubtedly been wronged, were nonetheless left without a remedy under the terms of the statute.
In such circumstances, where "oppression" has been clearly established but the concerned statutory provisions fail to afford the injured parties adequate relief, it cannot seriously be questioned that equity will not suffer a wrong without a remedy. Crane v. Bielski, 15 N.J. 342, 349, 104 A.2d 651 (1954); Roberts v. Roberts, 106 N.J. Super. 108, 109, 254 A.2d 323 (Ch.Div. 1969); Orland Properties, Inc. v. Broderick, 94 N.J. Super. 307, 313-14, 228 A.2d 95 (Ch.Div. 1967); Cona v. Gower, 89 N.J. Super. 510, 516, 215 A.2d 575 (Ch.Div. 1965); Cafe Gallery, Inc. v. Alcoholic Beverage Control Div., 186 N.J. Super. 189, 197, 451 A.2d 1333 (Law Div. 1982). "This maxim is derived ... from the more comprehensive legal maxim that wherever a legal right has been infringed a remedy will be given." Cona v. Gower, supra, 89 N.J. Super. at 516, 215 A.2d 575.
Early on in this case, after having concluded that a valid merger of Jonathan Royce into Purcell Group, Inc. had taken place, the trial court noted that the Oppressed Minority Shareholder Statute no longer seemed to provide plaintiffs, as minority shareholders of Jonathan Royce, with a remedy, but it went on to state that "where there is a cause of action equity will not allow the [injured] party to go unaided, and ... if there ... isn't a remedy we will *282 create one." Subsequently, in its supplemental findings of fact and conclusions of law, the trial court announced further that:
The difficulty the Court had in assessing the damages was discussed in the October 24, 1991[] decision and will not be repeated here. These difficulties the Court lay[s] at the doorstep of Mr. Purcell, based upon the devious manner in which he operated. It was this Court's opinion that a remedy was necessary and it had to be devised as best as possible under the circumstances. Mr. Purcell provided no help in that regard; it is not easy to follow all of [his] manipulations. [Emphasis added].
Here, a legal right was clearly infringed. The trial court concluded so when it found that plaintiffs had demonstrated "oppressive" conduct on the part of defendants, particularly Purcell. Thus, the trial court's award of monetary damages and stock shares represented an entirely valid exercise of its general equity powers.
Beyond this, liability could also have been properly imposed upon Purcell personally under a piercing of the corporate veil theory, and upon the relevant corporate defendants under a successor liability theory. First, the trial court expressly concluded that Purcell was using Purcell, Inc. as his "alter ego" and thus, was abusing the corporate form in order to advance his own personal interests. Furthermore, it found that Purcell, on numerous occasions, had actually defrauded plaintiff Lawrence Walensky, a fellow shareholder. In the presence of such circumstances, our courts clearly have the power to pierce a business entity's corporate veil in order to impose liability on the corporate principals. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). See also Dorn v. Transport of New Jersey, 200 N.J. Super. 159, 165, 491 A.2d 1 (App.Div. 1984). "The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 500, 468 A.2d 150 (1983) (citations omitted). Clearly, "the corporate form may not be used as a shield to perpetrate injustice," and "[w]hen the corporate cloak is used as a subterfuge to justify wrongdoing, it will be disregarded." Miller & Dobrin Furniture *283 Co. v. Camden Fire Ins. Co. Ass'n, 55 N.J. Super. 205, 217, 150 A.2d 276 (Law Div. 1959).
It is well settled that a court of equity is always concerned with substance and not merely form, and thus, it will go behind the corporate form where necessary to do justice. Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 500-01, 144 A.2d 207 (App. Div. 1958). See also Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 254, 293 A.2d 682 (Ch.Div. 1972). Furthermore, in a court of equity, all that is required to justify the piercing of a corporate veil is "equitable fraud." This includes "all acts, omissions or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another." Macfadden v. Macfadden, 49 N.J. Super. 356, 360, 139 A.2d 774 (App.Div.), certif. denied, 27 N.J. 155, 141 A.2d 828 (1958).
In the precise context presented by this case, our courts have not hesitated to pierce the corporate veil of a closely held corporation in order to impose personal liability. See Stochastic Decisions v. DiDomenico, 236 N.J. Super. 388, 394, 565 A.2d 1133 (App.Div. 1989), certif. denied, 121 N.J. 607, 583 A.2d 309 (1990). Thus:
[I]f a controlling stockholder uses a closed corporation as his personal business conduit, he may be held responsible for the debts of his "alter ego," particularly when substantial stock ownership, combined with other factors, clearly supports a disregard of the corporate fiction on grounds of fundamental equity and fairness. [18 C.J.S. Corporations § 14 at 283-84 (1990) (footnotes omitted)].
Here, Purcell plainly used Purcell, Inc. and Jonathan Royce, along with virtually all of the other closely held corporations that he controlled as a result of his majority shareholder status, as his "personal business conduits." Not only was there "equitable fraud" here, but the trial court expressly concluded that there had been actual legal fraud on the part of Purcell. Consequently, interests of fairness and justice clearly support a disregarding of the corporate form in this case in order to impose personal liability on Purcell for his wrongdoings against plaintiffs *284 as minority shareholders of Jonathan Royce. However, the situation here is such that Jonathan Royce is now defunct, having been merged into Purcell Group, Inc. Thus, the particular corporate form which served to mask these abuses no longer exists to be disregarded. Nevertheless, under such circumstances, there can be little question that Purcell should not be able to escape personal liability for his abuses while running Jonathan Royce simply due to the fact of the merger. Certainly, the relevant corporate defendants in this case cannot escape liability for the wrongs perpetrated upon plaintiffs by Jonathan Royce, through its majority shareholder, simply based on the fact that that corporation has been merged into another one. Under similar principles, Purcell cannot be allowed to escape such liability either.
Specifically, the doctrine of successor liability exists to protect against such inequities. Thus, it has been recognized that "a successor becomes liable for all obligations of its predecessor when the two corporations merge." Brotherton v. Celotex Corp., 202 N.J. Super. 148, 155, 493 A.2d 1337 (Law Div. 1985). See also State, Dept. of Environ. Protect. v. Ventron Corp., supra, 94 N.J. at 503, 468 A.2d 150; Wilson v. Fare Well Corp., 140 N.J. Super. 476, 485, 356 A.2d 458 (Law Div. 1976). This principle has been codified in N.J.S.A. 14A:10-6, which provides, in pertinent part, that:
When a merger or consolidation has become effective:
* * * * * * * *
(e) The surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be enforced as if such merger or consolidation had not taken place. Neither the rights of creditors nor any liens upon, or security interests in, the property of any of such corporations shall be impaired by such merger or consolidation.
Consequently, the merger of Jonathan Royce into Purcell Group, Inc. cannot, and does not, serve to deprive plaintiffs of a remedy based on the tortious conduct of Jonathan Royce and its principal. Instead, the relief for such conduct must now simply come from the successor corporation, Purcell Group, Inc., instead of the predecessor corporation, Jonathan Royce. Therefore, under *285 either principles of general equity or common law corporations doctrine, plaintiffs were, and are, entitled to relief.
Accordingly, the final judgment of the Chancery Division, dated November 12, 1991, is affirmed substantially for the reasons expressed by Judge Boyle in his oral opinion of October 24, 1991, which was later augmented by his written supplementary findings of fact and conclusions of law, filed February 19, 1992. Additionally, the order dated December 9, 1991, that denied defendants' motion for reconsideration or, alternatively, for a new trial, is affirmed substantially for the reasons expressed by Judge Boyle in his oral opinion of December 6, 1991.