**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2207-16T2

RICHARD PARKER,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

STEVEN PARKER,

      Defendant-Appellant/
      Cross-Respondent.

_____

          Argued February 25, 2019 – Decided March 18, 2019

          Before Judges Sabatino, Haas and Sumners.

          On appeal from Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000108-13.

          Arthur D. Grossman argued the cause for appellant/cross-respondent (Mandelbaum Salsburg, PC, attorneys; Stuart I. Gold, of counsel and on the briefs; Barry M. Mandelbaum, Yale I. Lazris, and Mara P. Codey, on the briefs).

          Alan S. Pralgever argued the cause for respondent/cross-appellant (Greenbaum, Rowe, Smith

& Davis, LLP, attorneys; Alan S. Pralgever, of counsel and on the briefs; Gary L. Koenigsberg, on the briefs).

PER CURIAM

This sprawling record on appeal and cross-appeal concerns disputes between two brothers relating to the two closely held businesses they jointly owned. We affirm the final judgment, for substantially the same reasons expressed in General Equity Judge Katherine R. Dupuis's thorough and perceptive written opinion.

In 1948, the brothers' parents founded a family wholesale flower and plant business. The brothers eventually took over the business. Approximately thirty years later, the brothers, plaintiff Richard Parker and defendant Steven Parker, formed two corporations: Parker Interior Plantscape ("PIP") and Parker Wholesale Florist ("PWF"). Each brother had a fifty percent stock ownership interest in both companies. Plaintiff Richard was the president of PIP, which he operated. Defendant Steven respectively was the president of PWF, which he operated.[1] The brothers divided the activities of the family business between PIP and PWF.

---

[1] We use the brothers' first names for clarity, but intend no disrespect in doing so.

A-2207-16T2

Over the years, PIP developed into a successful interior landscaping company, which was especially known for its elaborate holiday displays. Meanwhile, PWF operated a wholesale and retail garden center. In general, each of the two brothers ran his respective business independently, with little or no involvement from the other brother.

Over time, PIP became much more successful financially than PWF. PWF was adversely affected by changes in the plant and flower business, and by the market impact of large lawn and garden companies and national chains upon smaller companies. Consequently, PWF needed regular cash infusions from PIP to cover its persistent annual losses. In order to make up PWF's shortfall, Steven, without obtaining permission in advance from Richard, directed the controller who served both companies to transfer money to PWF from PIP's accounts to make up the difference. The two brothers' compensation from the companies was equalized after these transfers.

Meanwhile, Richard was expanding the PIP business. Among other things, he began negotiations with a national media company to develop a joint venture. In late 2013, PIP entered into a contract with the media company, in which PIP agreed to provide the company with a prototype and other displays. The displays were very expensive to create. It was hoped that the venture would

3

result in large future profits for PIP. Unfortunately, the venture stalled, and the media company ultimately paid a settlement in August 2016 to PIP to terminate their relationship. According to Richard, that settlement amount was less than the total costs that PIP expected to incur in performing its outstanding obligations.[2]

Richard filed suit in the Chancery Division against Steven in October 2013, alleging shareholder oppression under N.J.S.A. 14A:12-7(1)(c). He sought to buy out Steven's interest in PIP. Steven filed a counterclaim, making reciprocal allegations of shareholder oppression against Richard.

The dispute was tried over thirty-four intermittent days before Judge Dupuis between November 2015 and June 2016. In addition to numerous fact witnesses, Judge Dupuis heard expert testimony from two valuation experts, Steven Chait for Richard and Henry Fuentes for Steven. Both Chait and Fuentes were certified public accountants.

---

[2] The terms of the agreements and of the settlement with the media company were confidential, but were made known by necessity to the trial judge. The case was tried in open court, see Rule 1:2-1, and the trial judge's opinion was not sealed. Counsel for plaintiff has represented to this court that the confidentiality provisions between PIP and the media company do not preclude us from discussing the contents of the trial court's opinion.

4

The experts agreed that PWF had no positive value and therefore they focused solely on PIP's value. The trial court ordered a valuation date for PIP of October 23, 2013, two days after the complaint was filed, and the experts complied.

Chait used a "capitalization of net income" valuation method, as permitted by IRS Revenue Ruling 59-60. Chait calculated a valuation of PIP at $1.356 million, which was reduced further to $864,450 for a twenty-five percent "marketability" discount. Under Chait's calculations, Steven's half-interest in PIP was $432,225.

Conversely, Steven's expert Fuentes initially calculated a value of PIP of $4.887 million, which factored in the alleged anticipated profits from the joint venture. Fuentes later recalculated that figure at $1.789 million, omitting the potential upside of the joint venture, based on the judge's decision to exclude the joint venture from the calculations of PIP's business value. Fuentes also made an alternate calculation of PIP's value using a net asset value method. That alternative calculation produced a value for PIP of $3.15 million.

After considering what can be fairly described as oceans of evidence, the judge concluded that Richard had proven shareholder oppression by Steven, in violation of N.J.S.A. 14A:12-7(1)(c), essentially by his conduct in repeatedly

5

transferring money out of PIP to PWF without Richard's consent. As a remedy under N.J.S.A. 14A:12-7(a), the judge ordered a buy-out of Steven's half interest in PIP.

In her forty-one-page detailed written opinion issued on December 22, 2016, the judge made a number of critical findings. In particular, she found that "Steven Parker hired excess help, ordered excess product, failed to regularly take inventory and refused to change the way he did business." The judge further concluded that Richard was an oppressed shareholder and Steven was not. The judge rejected Steven's argument that a co-owner of an equally-owned corporation cannot, as a matter of law, be liable for oppressive conduct. Indeed, the case law is to the contrary. See, e.g., Bonavita v. Corbo, 300 N.J. Super. 179, 187-89 (Ch. Div. 1996) (finding a fifty percent shareholder to be the oppressed minority owner for purposes of the statute).

As a remedy, Judge Dupuis concluded that Richard was entitled to buy out Steven's interest in PIP. The judge mainly adopted the valuation of plaintiff's expert Chait and rejected that of the defense expert, Fuentes. As the judge explained in her opinion:

> The court believes Mr. Chait's discounted cash flow method based on the years 2009 to 2013 to be the most appropriate method to value the business. The court believes Mr. Fuentes['s] calculation using the

years 2013-2018 to be inappropriate where there is historical data and where the business is facing potential declines as a result of market uncertainly, in particular the decline of its most profitable business in Atlantic City.

Mr. Chait values the business at $1,356,000. The court agrees. The court believes a marketability discount should be applied. The actions of defendant were the cause of the lawsuit. He cannot be rewarded by not applying this discount. In cases where the oppressing shareholder instigates the problems, as in this case, fairness dictates that the oppressing shareholder should not benefit at the expense of the oppressed. [Balsamides v. Protameen] Chems., 160 N.J. 352, 382 (1999). The potential buyer base for Richard Parker will remain illiquid because it is not publicly traded and public information about it is not widely disseminated moving forward. Id. at 378. In this matter, Steven Parker's wrongful act caused an extraordinary circumstance which requires this court to apply a marketability discount. Steven Parker, the oppressing shareholder, cannot receive a windfall as a result of his actions, [so] the marketability discount will be applied.

The judge then found that the value of Steven's one-half interest in PIP "must be reduced by 25% representing the marketability discount." Steven was to sell his shares to Richard on that basis. The judge found that no "minority discount" should be applied. She also declined to adjust the value further by the distribution to Steven shown on the 2013 books but which had been paid in 2014.

7

These various calculations, after certain adjustments made in a subsequent order, led the judge to conclude that the value of Steven's interest in PIP was $508,500. She ordered Richard to pay that amount to Steven to buy out his interest. The judge rejected all other claims. The judge also declined Richard's request for compensatory damages, punitive damages, and counsel fees.

This appeal and cross-appeal ensued.

In his appeal, Steven argues that the trial court erred in: (1) finding it was him, rather than Richard, who committed shareholder oppression; (2) applying a marketability discount to the fair value of Steven's interest in PIP; (3) setting the valuation date; (4) choosing the wrong valuation method; and (5) excluding evidence of PIP's post-trial settlement with the media company.

In his cross-appeal, Richard contends that the trial court erred in: (1) denying him compensatory and punitive damages and an award of counsel fees from Steven; (2) excluding from evidence certain pre-2013 consultant reports about PWF's business; and (3) excluding evidence of the parties' settlement discussions.

We review these contentions mindful of the governing standards of appellate review. In general, "[f]inal determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of

8

review[.]" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). "'[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" In re Trust Created By Agreement Dated December 20, 1961, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009).

That said, we review rulings on pure questions of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1993). However, findings that "may be regarded as mixed resolutions of law and fact" generally receive deference on appeal, with review "limited to determining whether there is sufficient credible evidence in the record to support these findings." P.T. & L. Constr. Co. v. State, Dep't of Transp., 108 N.J. 539, 560 (1987).

In the present context of a shareholder oppression case, we also must recognize that claims for relief under N.J.S.A. 14A:12-7(1)(c) "are very fact-sensitive." Brenner v. Berkowitz, 134 N.J. 488, 516 (1993). The standard of

review for a finding that a corporate official or shareholder acted oppressively for purposes of that statute is whether "there is substantial credible evidence in the record as a whole which reasonably warrants the findings and conclusions of the trial court." Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 279 (App. Div. 1993). A reviewing court must accept the trial court's determinations unless it finds an abuse of discretion. Ibid. (citing Leimgruber v. Claridge Assocs., Ltd., 73 N.J. 450, 455-56 (1977)).

Having applied these principles, we reject the arguments the parties have presented on the appeal and cross-appeal. We affirm the trial court's final judgment for the cogent reasons expressed in Judge Dupuis's comprehensive written opinion and in her various rulings preceding, during, and after the trial. There is substantial credible evidence in the record to support the judge's factual findings. Her analysis was consistent with sound legal principles and she did not misapply her discretion. We add only a few amplifying comments.

The judge had a well-reasoned basis for regarding PIP's future venture with the media company as "inchoate" as of the 2013 valuation date, and in declining to allow the potential yet-to-be-realized advantages of that venture to serve as a positive factor in the valuation of PIP. Although the nascent venture had the potential to generate more revenue for PIP, the venture was only in the

incipient stage, and there was little certainty it would be profitable and sustainable. As it turned out, the project aborted rather quickly, and it was expensive for PIP to perform the various contractual obligations it incurred pursuant to the venture. The judge did not misapply her authority and her considerable discretion in reaching a valuation figure by excluding this venture and PIP's settlement with the media company from the calculus.

The judge also did not manifestly err in her determination of PIP's value. Although the parties quibble in opposite directions over certain aspects of her calculations, the calculations were adequately supported by the expert testimony and logical reasoning.

The judge had the prerogative to find the expert opinions of CPA Chait generally more credible than those of CPA Fuentes. City of Long Branch v. Liu, 203 N.J. 464, 491-92 (2010); Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing the trier of fact's ability to accept, in full or in part, the testimony of one expert over another). The marketability discount was justified to avoid allowing Steven to depart PIP on the same terms as if his shares were fully liquid. Brown v. Brown, 348 N.J. Super. 466, 484-86 (App. Div. 2002). Moreover, the court's selection of the valuation date was equitable under the circumstances presented. N.J.S.A. 14A:12-7(8)(a); Musto

11

v. Vidas, 281 N.J. Super. 548, 561 (App. Div. 1995) (noting the discretion of the court to use the date of the complaint as the valuation date or such earlier or later date as the court may find equitable).

The judge presented ample reasons grounded in the evidence for finding Richard to be an oppressed shareholder and Steven to be the oppressor. We are unpersuaded by Steven's argument that Richard had the unilateral power as a half-owner of the two companies to prevent Steven from draining funds from PIP to pay PWF's deficits. There is also ample proof that Richard complained about Steven's failed business practices and the inter-company transfers, and that Steven did not cease the conduct.

We likewise reject Richard's contention that the trial judge was obligated to award him the additional relief of money damages and counsel fees. Those remedies are discretionary under the applicable statutes and case law. See, e.g., Willis v. Ashby, 353 N.J. Super. 104, 112 (App. Div. 2002) (as to compensatory damages); Maul v. Kirkman, 270 N.J. Super. 596, 619-20 (App. Div. 1994) (as to punitive damages); Torres v. Schripps, Inc., 342 N.J. Super. 419, 438 (App. Div. 2001) (as to counsel fees). The trial judge certainly had a "feel for the case," which equally applies to the relief that she denied as well as the relief she chose to grant.

All other arguments raised in this appeal and the cross-appeal, to the extent we have not addressed them, are without sufficient merit to be discussed. R. 2:11-3(e)(1)(E). There is simply no reason to set aside or modify the judge's decision, or to remand this protracted litigation for even more proceedings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2207-16T2