595 A.2d 550

WYNWOOD CONDOMINIUM ASSOCIATION, INC., PLAINTIFFS, v. TWIN TREES DEVELOPMENT CO., INC., BRUNSWICK INDUS-TRIAL DEVELOPMENT CORP., ANTHONY HOMES, INC., DAVID C. SAVAGE, INDIVIDUALLY, ALEXANDER MOLNAR, INDIVIDUALLY, ANTHONY R. CRISCUOLO, INDIVIDUALLY, DAVID A. SALTMAN AND TOWNSHIP OF SOUTH BRUNS-WICK, HOOVER TREATED WOOD PRODUCTS, INC., PLY–GEM INDUSTRIES, INC., PLY–GEM MANUFACTURING COR-

PORATION, ARNOX CORPORATION, OSMOSE WOOD PRE-
SERVING, INC., D/B/A OSMOSE WOOD PRESERVING DIVI-
SION, TRIANGLE BUILDING SUPPLIES AND LUMBER CO.,
MIRON LUMBER COMPANY, DEE LUMBER COMPANY, H.M.
STAUFFER AND SONS, INC., BUILDERS TRUST WARRANTY
CORPORATION, RESIDENTIAL WARRANTY CORPORATION,
JOHN DOE WARRANTY COMPANY, STATE OF NEW JERSEY,
DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF
HOUSING AND DEVELOPMENT, BUREAU OF HOME-
OWNERS PROTECTION, HOME OWNERS WARRANTY COR-
PORATION, AMERICAN WOOD PRESERVERS ASSOCIATION,
NATIONAL FOREST PRODUCTS ASSOCIATION, UNDER-
WRITERS LABORATORIES, INC., CHEMICAL SPECIALTIES,
INC., MINERAL RESEARCH AND DEVELOPMENT CORPORA-
TION, BUILDERS TRUST WARRANTY CORPORATION, RESI-
DENTIAL WARRANTY CORPORATION, JOHN DOE SUBS
(FICTITIOUS NAME REPRESENTING SUBCONTRACTORS
WHO ENGAGED IN THE CONSTRUCTION OF CONDO) JOHN
DOE CHEMICAL (FICTITIOUS NAME REPRESENTING MANU-
FACTURERS OR DISTRIBUTORS OF CHEMICALS OR CHEMI-
CAL RELATED PRODUCTS UTILIZED IN TREATING WOOD
FOR FIRE RETARDANCY), JOHN DOE MFGR (FICTITIOUS
NAME REPRESENTING MANUFACTURERS OR DISTRIBU-
TORS OF CHEMICALLY TREATED WOOD PRODUCTS), JOHN
DOE SUPPLIER (FICTITIOUS NAME REPRESENTING SUP-
PLIERS OF CHEMICALLY TREATED WOOD PRODUCTS),
JOHN DOE ASSN (FICTITIOUS PERSON OR ENTITY/TRADE
ASSOCIATION), JOHN DOE TESTER (FICTITIOUS NAME REP-
RESENTING TESTERS OF CHEMICALLY TREATED WOOD
PRODUCTS AND THE CHEMICALS USED IN SUCH TREAT-
MENT), JOHN DOE TRUSTEES (FICTITIOUS NAMES REPRE-
SENTING MEMBERS OF THE BOARD OF TRUSTEES AP-
POINTED BY THE DEVELOPER), JOHN DOE ARCHITECTS
DEFENDANTS (FICTITIOUS NAMES REPRESENTING ARCHI-
TECTS WHO PERFORMED ARCHITECTURAL SERVICES FOR
DEVELOPER), AND JOHN DOE X DEFENDANTS.

Superior Court of New Jersey
Chancery Division
General Equity–Middlesex County

Decided May 15, 1991.

512

*Louis Cohen* for plaintiff (*Brigiani, Gelzer, Cohen & Schneider,* attorneys).

*David A. Saltman,* defendant, *pro se.*

*Joseph J. Benedict* for defendant Township of South Brunswick (*Benedict & Altman,* attorneys).

BACHMAN, P.J. Ch.

This matter originated in the Law Division. The Chancery Division aspects of this dispute were originally part of a complaint containing several completely unrelated causes of action. By order of a Law Division judge, those counts which he found to sound in Chancery were severed and transferred to this Division [1].

The overall facts underlying this dispute concern three parcels of land located in South Brunswick, New Jersey (Lots 96, 126.1 and 145.2). These lots were packaged into a condominium site plan through the filing of a master deed in June 1979. These lots had been owned by Brunswick Industrial Development ("BID") and Alexander Molnar. On September 17, 1982, Molnar sold Lot 126.1 to Twin Trees Development Corp., Inc. ("Twin Trees"). As part of this conveyance, a drainage ease-

---

[1] Counts 25, 29, 30, 31, 32, 33 and 34 of the 34 count complaint were severed. These counts, which stem from transfers of the lots which comprise the Wynwood condominium project, and the subsequent tax-sale certificate foreclosure upon one of the parcels, involve claims of nuisance, consumer fraud, common law fraud and negligence in discharging contractual duties. Among the forms of relief requested by plaintiff are the voiding of the tax-sale notices and liens, the creation of a constructive trust, and declaratory judgment.

ment was given to Twin Trees with respect to Lot 145.2. Also on that day, BID was deeded sole title to Lot 145.2.

The problems in this case stem from BID's October 5, 1983 subdivision of Lot 145.2, into Lots 15.10, 15.02 and 15.01. On October 21, 1983, BID and Twin Trees then jointly filed a condominium master deed for the site. This master deed created the Wynwood Condominium Development ("Wynwood"). Title to these parcels, however, had not been transferred; Twin Trees and BID still held title to their respective lots. Interestingly, the master deed did contain a portion of what had originally been Lot 145.2.—specifically, it contained Lots 15.10 and 15.02. Lot 15.01 had been omitted from the master deed. Fortunately, this lot does not appear to be at issue in this case.

On January 9, 1984, Lot 15.10 was deeded to Anthony Homes. On December 12, 1986, Lot 15.02 was deeded back to Alexander Molnar. Lot 15.02 was then deeded to Wynwood Condominium Association on June 30, 1988. The stated purpose of this June 1988 conveyance was to correct "mistakenly executed deeds" and, thereby, return this lot back to the condominium. Also of interest is the fact that Lot 15.02 does not contain any buildings or other structures of a permanent nature. This lot's use and purpose is that of a detention drainage basin for the condominium complex. At issue is the fact that the 1985 tax bill and subsequent notices of the tax sale for Lot 15.02 were sent to Alexander Molnar. Molnar did not pay these taxes,[2] and a tax sale certificate on the parcel was purchased by David Saltman on September 26, 1986. Saltman paid all subsequent taxes on this parcel. In his certification, in addition to conceding that a mistake had occurred regarding the transfer of Lot 15.02, Saltman states that he has offered to assign his certificate of sale to plaintiff. Plaintiff, however, has refused the offer.

The court is currently faced with two separate and distinct motions which the parties contend present it with the same

---

[2]Since 1982, the taxes on this lot were frequently in arrears.

underlying questions of law. First, Saltman has moved for summary judgement allowing him to foreclose upon his tax sale certificates as, pursuant to *N.J.S.A.* 54:5–54, the two-year statutory redemption period has expired. The second motion before the court is one made by defendant Township of South Brunswick ("South Brunswick"). South Brunswick has made a motion to dismiss various counts (*i.e.*, counts 25 and 29 through 34) in plaintiff's complaint, alleging negligence and nuisance causes of action against the township. It is plaintiff's contention that South Brunswick negligently transferred, through the tax sale, the detention drainage basin. Plaintiff claims that this parcel was intended for their benefit and that they have a drainage easement with regard to this parcel through various deed descriptions.

## I.

Plaintiff's claims against Saltman and South Brunswick are quite clearly intertwined. From a transactional perspective, the principle question before the court is the validity of the tax sale certificate held by Saltman. In order to resolve this issue, the court must construe two different legislative schemes. Specifically, the court must determine the interrelationship of the statutes concerning the "Assessment and Collection of Taxes," *N.J.S.A.* 54:4–1 *et seq.*, and the "Creation, Enforcement and Collection of Liens for Unpaid Taxes and Other Municipal Liens on Real Property," *N.J.S.A.* 54:5–1 *et seq.*, with the statutes that govern "Condominiums," *N.J.S.A.* 46:8B–1 *et seq.* In short, the court must determine whether the tax sale notice provisions of *N.J.S.A.* 54:5–25 as to the record owner of a parcel—in this case, notice to Molnar—are proper in light of the fact that the Wynwood condominium project had been created and established by the filing of a master deed with the county recording officer, in full compliance with the provisions of *N.J.S.A.* 46:8B–8 and –9. Lot 15.02 was contained in the legal description of the land covered by the Wynwood master deed.

Of significance to the resolution of this question is the fact that the practice of selling tax sale certificates for delinquent real estate taxes in New Jersey dates back to the later part of the 19th Century. Note, "Tax Sale Law in New Jersey: A Re–Examination," 26 *Rutgers L.Rev.* 266, 276 (1973). The present statutory incarnation of this practice, along with the practice of assessing taxes, stems from 1918 revisions of the tax assessment and tax sale laws. *Id.* at 286. Although subject to periodic amendments and recodified in various statutory revisions, this legislative scheme has existed in New Jersey throughout the 20th Century and can currently be found in *N.J.S.A.* 54:4–1 *et seq.* and :5–1 *et seq.*

In contrast to the modern legislative scheme concerning real estate tax assessments and tax sales, which stem from the 1918 legislation discussed above, New Jersey's statutes governing condominiums dates back to the passage of the Condominium Act in 1969. Smith, *New Jersey Condominium Law: A Practical Guide to Condominium and Other Common Interest Projects* (1990) at 1–3. The purpose of this legislation was to provide "enhanced protection for everyone involved in the creation ... of ... [such] developments." *Id.* at 2. Specifically, this 1969 law was enacted to redress many of the problems regarding "common elements" existent in New Jersey's prior condominium legislation, the 1963 Horizontal Property Act. *Id.* at 1.

Under the legal principles commonly referred to as the canons of statutory interpretation, Dickerson, *The Interpretation and Application of Statutes* (1975), "[s]ound principles of statutory construction support preference of a more specific and more recently enacted ... statute...." *Id.* at 227. *State v. One 1976 Pontiac Firebird*, 168 *N.J.Super.* 168, 176, 402 *A.*2d 254 (App.Div.1979). In addition, in *Newark v. Dept. of Civil Service*, 68 *N.J.Super.* 416, 172 *A.*2d 681 (App.Div.1961), the Appellate Division held that "if there is an irreconcilable conflict between the new provisions and the prior statutes relating to the same subject matter, the former will control as it

is the later expression of the Legislature." *Id.* at 427, 172 *A.*2d 681. Finally, in *Cafe Gallery, Inc. v. State,* 189 *N.J.Super.* 468, 460 *A.*2d 227 (Law Div.1983), the court wrote that "[w]here 'a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter, the courts will find a legislative intent to supersede the earlier law.' " *Id.* at 473, 460 *A.*2d 227; citation omitted.

Clearly, the court is faced with a situation such as those described in the above cited authorities: that of two legislative schemes that are in conflict. Specifically, the clear effect of the tax assessment and tax sale legislation is to notice the record owner of a parcel of his or her various responsibilities with regard to the payment of real estate taxes. In contrast to this is New Jersey's Condominium Act. As discussed above, one of the purposes of this legislation is to protect those involved in the project with regard to "common elements." One of the mechanisms by which this legislation effects these goals is through the condominium's filing of a master deed. *N.J.S.A.* 46:8B–8 and –9. Obviously, in a situation such as the one presented by this case, where a developer erroneously retains title to a portion of a parcel that is the subject of a condominium's master deed, the two legislative schemes will come into conflict.

In the case currently before the court, what is now Lot 15.02 was clearly contained in Wynwood's master deed. This master deed was properly recorded in Middlesex County in October 1983. Unfortunately, in January 1984, this lot was erroneously transferred to Molnar. As such, Molnar, rather than Wynwood, was given notice of the real estate tax delinquencies and the subsequent tax sale. In June 1988, in an effort to remedy this mistake, Molnar conveyed title in Lot 15.02 to Wynwood. Saltman, in his papers, concedes that such was done. Obviously, as the subsequent actions of the parties demonstrate (*i.e.,* Molnar's June 1988 transfer of Lot 15.02 to Wynwood, for the express purpose of rectifying the prior error in title), the parcel properly belonged to Wynwood, in a manner most likely consist-

ent with the legislative scheme governing condominiums, which is that the title to all of the parcels comprising the project is with one specific owner. *N.J.S.A.* 46:8B–1 *et seq.* However, during the relevant period, title to the land at issue was nominally held by either Anthony Homes, Inc. or Molnar.

■ Based upon the fact that Molnar and Anthony Homes were the nominal title holders of Lot 15.02, South Brunswick, utilizing that chain of title, assessed taxes as if this parcel was not part of the Wynwood condominium project [3]. This was done despite the fact that a master deed had been properly filed by Wynwood in accordance with *N.J.S.A.* 46:8B–8 [4]. Certainly,

---

[3]It is interesting to note that Saltman, in support of his motion for summary judgement relative to the tax sale certificates that he holds, although conceding that a mistake was made in the transfer of Lot 15.02, relies on a technically based argument. Specifically, Saltman argues that the assessment and tax sale were proper as various title searches only revealed Molnar to be the record holder of the parcel. Therefore, Saltman asserts that the proper parties were noticed. Paradoxically, if a foreclosure action had been commenced based upon these tax sale certificates, "[n]otice [would have had to have been] made upon all persons interested in the land of their right to redeem. This notice [would have had to have been] served personally on persons within the municipality and either personally or by mail to all other persons." Saltman, 93 *N.J.Lawyer* 46, 47 (Fall 1990). In addition, as "[t]he owner, mortgagee, occupant or other person having an interest in land sold for municipal liens may redeem [them]," Saltman (Fall 1983) 105 *N.J.Lawyer* 49, 52 (Fall 1983), a party such as Wynwood would obviously have had to been noticed as a named defendant to such a tax sale certificate foreclosure action. As a defendant to such a foreclosure action, Wynwood would, of course, have standing to raise a variety of defenses, both equitable and legal.

[4]By virtue of the master deed, which enumerated Lot 15.02 to be part of the condominium scheme, pursuant to *N.J.S.A.* 46:8B–9(f), this detention drainage basin became part of the common elements of the condominium. Since Lot 15.02 is part of the common elements, under *N.J.S.A.* 46:8B–6, such common elements become a proportionate undivided interest assigned to each unit in the condominium project. Under *N.J.S.A.* 46:8B–19, the taxes for the condominium must be assessed against each unit in the project, not individually against the subject property. Therefore, Lot 15.02 was improperly assessed to Molnar, as it should have been assessed, on a pro rata basis, to the individual condominium unit holders. The process of assessing the taxes on the common elements of a condominium to the individual unit holders is also supported by

the situation presented by this unusual set of facts, circumstances which could not have been contemplated by the Legislature when it passed the Condominium Act, have created a conflict between the statutory schemes embodied in *N.J.S.A.* 46:8B–1 *et seq.* and 54:5–1 *et seq.*

In resolving the conflict presented by this case, the court is cognizant of the fact that the Condominium Act—the more recent of the two statutory schemes at issue—requires that a condominium master deed contain common elements. *N.J.S.A.* 46:8B–9(f). Lot 15.02 was contained in Wynwood's master deed. Drainage easements through it were granted to the other lots in the development. It is used as a detention drainage basin for the complex. It is quite obviously a common element of the project. Clearly, *N.J.S.A.* 46:8B–9(f) was enacted to protect condominium homeowners, with regard to the common elements of the project. As such, the canons of statutory interpretation compel this court to rule that South Brunswick's assessment of taxes on Lot 15.02 to Molnar was in error.

Although South Brunswick's assessment of taxes, and notice thereof to Molnar, were proper under the system embodied in *N.J.S.A.* 54:5–1 *et seq.*, the Legislature specifically passed the Condominium Act to protect individuals participating in this type of housing. The Wynwood project was properly recorded under the provisions of this enactment. *N.J.S.A.* 46:8B–8. Thus, despite the fact that this case presents a set of circumstances which falls outside the technical purview of *N.J.S.A.* 46:8B–1 *et seq.*, nonetheless, it is clear that this statute was meant to provide protection to the individual unit owners of a condominium project through the filing of the master deed. Thus, as a conflict exists between two statutory schemes, pursuant to such authorities as *State v. One 1976 Pontiac*

---

such cases as *Troy Village Realty Co. v. Springfield Tp. of Union County,* 191 *N.J.Super.* 559, 468 *A.*2d 445 (App.Div.1983), and *Glenpointe Assoc. v. Teaneck Tp.,* 10 *N.J.Tax* 288 (Tax Ct.1988).

*Firebird, supra, Newark v. Dept. of Civil Service, supra,* and *Cafe Gallery, Inc. v. State, supra,* the more recent and more specific enactment must control.

In addition, equitable principles also require that such a result must be reached. When a matter presents the court with a set of circumstances that apparently escaped the attention of the Legislature, "[t]he judicial task becomes one of resolving, within the framework of the appropriate canons of construction, the probable legislative intention...." *Dvorkin v. Dover Tp.,* 29 *N.J.* 303, 313, 148 *A.*2d 793 (1959). When presented with such circumstances, a court should look to the principles of statutory interpretation " 'to interpret the law to be what is most consonant to equity and least inconvenient' ... [t]his is the doctrine of 'equity of statute' ... and from which flows the constructional aid ... that the spirit of the legislative direction prevails over its terms." *Id.* at 315, 148 *A.*2d 793. *See also State v. Campobasso,* 125 *N.J.Super.* 103, 108–109, 308 *A.*2d 674 (Law Div.1973), and *Naame v. Bradway,* 161 *N.J.Super.* 498, 502–503, 391 *A.*2d 1262 (Ch.Div.1978). In this case, as a result of the fact that, during the relevant period, title to Lot 15.02 was held by Molnar, notice of the tax assessment and subsequent tax sale was not given to Wynwood. As discussed above, the possibility that a lot contained in a condominium master deed description might be held by an outside or uninterested party was a contingency not contemplated by the statute. Nonetheless, it is clear that the Legislature intended to protect a condominium's common elements through the filing of a master deed. As such, equitable principles also require that South Brunswick's assessment of Lot 15.02 be deemed erroneous as it was not based upon the master deed filed in accordance with *N.J.S.A.* 46:8B–8.

## II.

As discussed above, the tax assessment of Lot 15.02 was erroneous due to the fact that a properly filed condominium

master deed had been filed for Wynwood. Nonetheless, South Brunswick, relying on *N.J.S.A.* 54:5-1 *et seq.*, contends that it properly assessed the taxes on this parcel to Molnar since he was record owner of the lot—albeit, an incorrect owner. South Brunswick also points out that, in addition to notifying Molnar of the events surrounding the assessment and the tax sale, it also properly advertised and gave public notice of the deficiency sale in accordance with *N.J.S.A.* 54:5-25 and -26. Therefore, especially as Molnar, and not Wynwood, was the record title holder of Lot 15.02, South Brunswick argues that it was not at fault in assessing the subject parcel and in its notice of the tax sale. As such, South Brunswick has moved to dismiss the various counts against it.

Clearly, as discussed above, the unusual facts presented by this case—that of an irregularity that erroneously made an outside party title holder of a parcel which is a common element of a condominium project—placed *N.J.S.A.* 46:8B-1 *et seq.* in conflict with *N.J.S.A.* 54:4-1 *et seq.* by virtue of a set of circumstances which could not have been contemplated by the Legislature. The magnitude of this conflict is such that the powers of this court had to be invoked to resolve it, at least with regard to the tax sale certificate foreclosure issues. With South Brunswick's motion, however, the court is faced with what is effectively a motion for summary judgement concerning the common law claims of negligence and nuisance. In order to make such a ruling, the court must have before it a record that has been developed fully enough to satisfy the requisite standard of judgement. For summary judgement, this standard is whether a genuine issue of material fact exists and, if not, then whether the movant is entitled to judgement as a matter of law. *R.* 4:46-2 and *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954).

With regard to South Brunswick's motion, the record currently before the court is insufficient, both factually and legally for the purposes of satisfying this standard of judgement. Specifically, concerning the negligence and nuisance counts, the record

is deficient of any facts concerning South Brunswick's practices and procedures as to recording condominium master deeds. Questions exist as to whether South Brunswick could have or should have recorded, or somehow otherwise cross-referenced, on a lot by lot basis, the fact that the Wynwood master deed was in existence. If such a procedure were or had been in existence, it might have impacted the township's responsibility for notifying Wynwood of both the tax assessment and the tax sale.

In addition, legal questions exist as to whether such causes of action would be actionable torts against a governmental entity, either procedurally [5] or substantively [6], under the New Jersey Tort Claims Act, *N.J.S.A.* 59:1-1 *et seq.* Specifically, *N.J.S.A.* 59:7-2 states that "[n]either a public entity nor a public employee is liable for an injury caused by: (a) [i]nstituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax." This statute, however, has been construed to confer municipal immunity only for discretionary mistakes, not clerical ones. *Tontodonati v. City of Paterson*, 229 *N.J.Super.* 475, 482–83, 551 *A.*2d 1046 (App.Div.1989), certif. den. 117 *N.J.* 35, 563 *A.*2d 808 (1989). In addition, if a finding were to be made that South Brunswick were liable in tort, then, although it would not be liable for the costs and fees associated with a tax sale certificates foreclosure (*e.g.,* interest, costs and fees pursuant to *N.J.S.A.* 54:5–29 and –32 and *R.* 4:42–9(a)(5) and –10), it would be liable for damages and lawful interest thereon. *Tontodonati, supra* at 484–85, 551 *A.*2d 1046.

Therefore, as the court does not have before it a record adequate for the purposes of summary judgement, South Brunswick's motion must be denied without prejudice. In addition, as all that remains of this matter are the negligence

---

[5]*See generally N.J.S.A.* 59:8–3 *et seq.*

[6]*See generally N.J.S.A.* 59:7–1 *et seq.*

and nuisance counts, common law causes of action for which the appropriate remedies now available are at law, this matter is to remain severed and transferred back to the Law Division.

### III.

As the tax assessment of Lot 15.02 to Molnar was erroneous, the appropriate remedy with regard to the foreclosure action is to rescind the tax sale certificates. The tax sale certificates held by Saltman must be rescinded as they are based upon an improper assessment. Specifically, as discussed above, the South Brunswick assessed Lot 15.02 based upon *N.J.S.A.* 54:5–1 *et seq.* However, as the detention drainage basin was a part of the condominium's common elements, the parcel should have been assessed and taxed to the individual unit holders on a *pro rata* basis.[7] Under circumstances such as these, rescission of the tax sale certificates is the appropriate remedy[8]. *Hudson Cty. Park Comm. v. Jacobson,* 132 *N.J.L.* 287, 40 *A.*2d 201 (Sup.Ct.1944); *Pioneer Gun Club v. Bass River Twp.,* 61 *N.J.Super.* 104, 160 *A.*2d 183 (Ch.Div.1960); *Nordell v. Mantua Twp.,* 45 *N.J.Super.* 253, 132 *A.*2d 39 (Ch.Div.1957).

However, Wynwood, or at least the individual unit holders of Wynwood, are nonetheless liable, on a pro rata basis, for the payment of a proper assessment of the taxes due on Lot 15.02 for the relevant period[9]. In addition, as *N.J.S.A.* 54:5–43 provides that, if a tax sale is found to be void, the municipality is to refund its purchase price, plus lawful interest. Thus, Saltman would be entitled to such remuneration from South Brunswick. Finally, if South Brunswick is found to be liable in tort for wrongfully assessing taxes on Lot 15.02, then Saltman

[7]*See* note 4, *supra.*

[8]*N.J.S.A.* 54:5–43 provides that, if a tax sale is found to be void, the municipality is to refund its purchase price, plus lawful interest.

[9]*See* note 4, *supra.*

might also pursue this tact in seeking additional renumeration. *Tontodonati, supra,* 229 *N.J.Super.* at 482–85, 551 *A.*2d 1046. However, as discussed above, such an action against the municipality may be either procedurally or substantively barred. *N.J.S.A.* 59:8–3 *et seq.* and :7–1 *et seq.*

Therefore, Saltman's motion for summary judgement so that he might proceed with his tax sale certificate foreclosure action is denied. As Saltman may have negligence and nuisance claims against South Brunswick, this aspect of the matter shall also remain severed and transferred back to the Law Division with the portions of the case discussed previously. Counsel for plaintiff is directed to submit the appropriate form of order.