NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2118-13T2

HIGHPOINT AT LAKEWOOD
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff-Appellant,

v.

THE TOWNSHIP OF LAKEWOOD, a
Municipal Corporation and Body
Politic of New Jersey,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

August 14, 2015

APPELLATE DIVISION

Argued November 18, 2014 — Decided August 14, 2015

Before Judges Ostrer, Hayden and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-214-12.

Scott K. Penick argued the cause for appellant (McGovern Legal Services, LLC, attorneys; Mr. Penick, on the briefs).

Christopher B. Healy argued the cause for respondent (Bathgate, Wegener & Wolf, PC, attorneys; Mr. Healy, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

    This appeal arises out of a condominium developer's failure to complete construction of certain planned units.  Plaintiff High Point at Lakewood Condominium Association, Inc. (High

Point) appeals from the General Equity Part's November 22, 2013, summary judgment order dismissing its quiet title complaint.

High Point currently consists of 260 completed condominium units in thirty-three low rise buildings, located within the bounds of a 25.03 acre property. The 1971 master deed contemplated the construction of 136 additional units in seventeen buildings in the southern portion of the total parcel. Pursuant to the master deed, the developer also obtained the power of attorney from all original owners to remove from the condominium unbuilt units and the land on which they were to be built. Neither the original developer, nor a successor in interest, completed the 136 unbuilt units, or formally removed them from the condominium. Eventually, the successor in interest failed to pay real estate taxes on the unbuilt units. Lakewood Township ultimately foreclosed on tax sale certificates and took title to the unbuilt units in 1980. There is no evidence that Lakewood attempted to exercise the power of attorney to remove the unbuilt units and the roughly 9.8 acres on which they were to be constructed.

In September 2012, High Point challenged Lakewood's foreclosure of the unbuilt units, and sought a declaration that the township did not hold title to the undeveloped portion of the parcel removed from the condominium's common property. In

the alternative, High Point asserted that Lakewood was liable for common area assessments payable by all unit owners. The trial court determined that Lakewood holds clear title to the undeveloped parcel removed from the condominium; and dismissed High Point's remaining claims.

High Point's appeal requires us to determine the status of the undeveloped parcel and the unbuilt or so-called "phantom" units. In so doing, we must address several novel questions regarding the rights and duties pertaining to such units. We hold that phantom units are subject to real estate tax, and to foreclosure if taxes are not paid. As the foreclosure pertains to specific units, the association is not entitled to personal notice. We also hold that the title owner of phantom units may be liable for common area assessments, absent legal or equitable defenses. Assuming the powers of attorney as were granted in this case comply with the New Jersey Condominium Act (Act), N.J.S.A. 46:8B-1 to -38, and run with land — about which we express substantial doubts — we hold that they are not self-executing. Consequently, absent the formal filing of a deed of removal, the phantom units and undeveloped parcel remain integrated with the balance of the development, as set forth in the master deed.

We therefore disagree with the trial court's determination that Lakewood currently holds separate title to the undeveloped parcel. Based on the record before us, Lakewood owns the phantom units and the undivided proportionate share of common elements accompanying those units. We therefore affirm in part and reverse in part the trial court's order, and remand for further proceedings.

## I.

The essential facts are undisputed. High Point was established under the Act pursuant to a master deed from High Point Development Corp. (HPDC) as grantor recorded in February 1971.[1] The master deed contemplated the construction of up to 396 condominium units in fifty separate buildings. Each building would contain eight units, except for building number four, which would contain four units. Each building adjoined at least one other building; thus, as depicted in drawings, the total proposed development appears to consist of a total of twenty-four separate structures.

---

[1] The original master deed was dated January 8, 1971, and recorded on February 8, 1971. An amendment was dated February 8, 1971, and recorded three days later to correct a typographical error resulting in the omission of the first eight words of section 13. We refer to the master deed as amended as the "master deed."

Under section 13 of the master deed, entitled "Removal," HPDC reserved the authority to remove "lands" described in the master deed by exercising powers of attorney granted by unit owners pursuant to the master deed. The first unnumbered paragraph states that any and all lands were subject to withdrawal from condominium ownership pursuant to a deed of revocation executed by all unit owners, or their attorneys-in-fact or mortgagees:

> Anything to the contrary herein or in any other document notwithstanding, the submission of the lands described in Exhibit "A" aforesaid[2] to condominium ownership shall be subject to removal from the provisions of the Condominium Act by a Deed(s) of Revocation executed by all unit owners or the sole owner of the property, the holders of all mortgages or other liens affecting all units, or be [sic] the attorney-in-fact for any of the foregoing, and recorded in the same office as this Master Deed.

HPDC also purported to reserve to itself the power to remove unsold units together with the common elements and land associated with them, to within twenty-five feet of structures not removed, pursuant to the following paragraph:

> Grantor hereby reserves for itself, its successors and assigns, the irrevocable right to remove, at its election, from the Condominium and from the application of the Condominium Act, any or all unsold units

---

[2] Exhibit A is the metes and bounds description of the "Entire Tract" as defined.

A-2118-13T2

> . . . comprising the Condominium, except for all units contained in Building Nos. 11 through 21 ("Charter Units"), together with that portion of the common elements of the Condominium comprising the land upon which the units removed are located and all lands contiguous thereto which are at least twenty-five (25) feet distant from any existing building or structure which remains a part of the Condominium. Said right of election to remove the Removed Units from the Condominium may be exercised in accordance with applicable law from time to time and any [sic] any time.

However, the master deed appears to acknowledge that consent of all unit owners was required for removal of any units, as set forth in the first and second unnumbered paragraphs. Consequently, in the third unnumbered paragraph within section 13, the deed purports to automatically grant powers of attorney to the grantor to exercise that consent:

> By acceptance of a deed to any unit or by the acceptance of any other legal or equitable interest in the Condominium, each and every contract purchaser, unit owner or occupant or holder of any mortgage or other liens, does automatically and irrevocably name, constitute, appoint and confirm Grantor its successors and assigns, as attorney-in-fact <u>for the purpose of executing such Deed(s) of Revocation or other instrument necessary to effect the foregoing</u>.
>
> [(Emphasis added).]

A-2118-13T2

The master deed also states, "The Power of Attorney aforesaid is expressly declared and acknowledged to be coupled with an interest in the subject matter."

The master deed provides, "[u]pon the removal(s) of any unit(s)," for the recalculation of the remaining unit owners' proportionate interest in common elements.[3]  In the event of removal, remaining unit owners retained an easement to parking, driveways for ingress and egress, and various utilities that may be located on or contiguous to removed units.

The recitals of the master deed recognize that in order to remove units or portions of common elements, the Act "requires that a Deed of Revocation be executed by all unit owners or the sole owner of the property and the holders of all mortgages or other liens affecting all units."  The recitals state that the powers of attorney were granted to enable HPDC to reserve unto itself the power of removal:

> WHEREAS, Grantor may at some future date determine that it is not feasible to continue the development and sale of the Entire Tract as a condominium in the manner herein provided, and may desire to remove from the aforesaid Condominium, according to the provisions of the Condominium Act, any or all condominium units not theretofore

---

[3] The master deed also preserves the right of owners or occupants of removed units to use the recreational clubhouse or pool facilities which remain common elements of the condominium, but puts a limit on the total number of families that can use them.

A-2118-13T2

sold, shown on the map hereinafter described as Exhibit "B", including those portions of the common elements constituting certain lands contiguous to and upon which such units are located (hereinafter referred to as the "Removed Units"); and

WHEREAS, in order to so remove the Removed Units, the Condominium Act requires that a Deed of Revocation be executed by all unit owners or the sole owner of the property and the holders of all mortgages or other liens affecting all units; and

WHEREAS, in order to facilitate the execution of any such Deed(s) of Revocation by all such required parties, the Grantor desires to reserve herein the irrevocable right to remove the Removed Units from the Condominium and from the application of the Condominium Act and for the Grantor to execute any such Deed(s) of Revocation as attorney-in-fact for all such required parties without any further consent or the necessity for execution of any further instrument or document by any such party.

Ultimately, only 260 condominium units were completed, although the date of their completion is not indicated in the record. The unbuilt 136 units were to be located on roughly 9.8 acres of land denominated as Block 423, Parcel 1A (Undeveloped Parcel).[4]

By a deed recorded on June 30, 1971, HPDC purported to transfer various rights and property to Unisave Service Corp.

_____

[4] Although the land is denominated as Parcel 1A in the foreclosure judgment discussed below, the record includes no other evidence — such as the tax map — reflecting the subdivision of the entire tract.

(Unisave) in exchange for $640,000. We infer that as of that date, HPDC had not completed construction of, or sold the 260 units that were ultimately finished and transferred. We do so because the deed purported to transfer buildings 1 through 10, and 22 through 50, including the apartments contained therein, plus "such land . . . which encompasses Building #13, Apartments D-1, D-2, D-3, D-4, and Building #14, Apartments R-1, R-2, E-3 and E-4." In other words, the only buildings apparently not transferred — perhaps because they were completed and units therein were sold or retained by HPDC — were nine buildings: 11 through 12, and 15 through 21.[5] The deed stated that the transferred property "is a portion of the property conveyed in the aforesaid Master Deed." Thus, according to the deed, the property transferred to Unisave included, but was not limited to, the 9.8 acres that were to contain the 136 never-built units.

The deed also transferred to Unisave the powers of attorney received by HPDC. "The foregoing conveyance is made together with all rights reserved to Grantor in the aforesaid Master Deed which include, but are not limited to: . . . (e) The right of

---

[5] So-called "Charter Units" — units in buildings 11 through 21 — were not subject to claimed removal rights, according to the master deed quoted above. Nonetheless, the land that encompassed the identified units in buildings 13 and 14 was transferred in the HPDC-to-Unisave deed.

removal reserved by Paragraph #13 of said Master Deed as the same may have been amended."

It is undisputed that Unisave ultimately defaulted on the payment of property tax on the 136 phantom units. In August 1979, Lakewood filed a complaint against each of the units seeking foreclosure in rem on the tax sale certificates of those units. The record does not include the complaint, but it is undisputed that Lakewood did not name High Point as a party, nor did it serve High Point with the complaint. However, Lakewood did publish notice of its complaint.

Ultimately, Lakewood secured a final judgment in foreclosure on the tax sale certificates on December 5, 1980, transferring to Lakewood "an absolute and indefeasible estate of inheritances in fee simple in said lands."[6] The judgment described the "lands" transferred, setting forth each unit, noting its building and apartment number, that it was part of

---

[6] The reference to a "fee simple" interest does not connote ownership of property removed from the condominium. "The New Jersey Supreme Court has characterized a condominium unit owner as having 'fee simple title to and enjoy[ing] exclusive ownership of his or her individual unit while retaining an undivided interest as a tenant in common in the facilities used by all of the other unit owners.'" Jennings v. Borough of Highlands, 418 N.J. Super. 405, 419 (App. Div. 2011) (emphasis added) (quoting Fox v. Kings Grant Maint. Ass'n, 167 N.J. 208, 219 (2001)).

Block 423, Parcel 1A, and that it consisted of "Vacant Land."[7]

According to High Point, for over thirty years thereafter, Lakewood did not take any steps to exercise physical possession of the foreclosed property.

Apparently concerned that the "status quo" would change, on September 24, 2012, High Point filed its complaint to quiet title to the undeveloped parcel. It sought a judgment declaring it the sole owner of the undeveloped parcel. In the alternative, if the court found that High Point did not own the parcel, then High Point — based on theories of contract and quasi-contract — sought back payments of unpaid assessments on the phantom units, plus interest, from January 1, 2006, through September 18, 2012.

High Point sought summary judgment, and Lakewood filed a cross-motion. High Point argued that the undeveloped parcel remained part of the common elements of the condominium; it was

---

[7] For example, the "Description on tax duplicate and in certificate of sale" for the first of the 136 units was presented as follows:

> Block 423 Parcel 1A3401
> Massachusetts Avenue
> Part of Block 423,
> Parcel 1A
> Building 34, Apt. 01
> High Point at Lakewood
> Vacant Land

11

not subject to separate taxation; High Point was entitled to notice; and the foreclosure judgment was void.

Lakewood argued that taxation and foreclosure were permitted on the unbuilt units; High Point was not entitled to notice; and High Point was time-barred from challenging the foreclosure. In its response to High Point's statement of material facts, Lakewood asserted that its judgment of foreclosure "effectuated Lakewood's exercise of its rights as successor in interest to the developer under Paragraph 13 of the Master Deed [governing removal] and resulted in Lakewood taking possession of the Property." Lakewood also submitted the opinion of a title officer with a title insurance agency, who stated that the HPDC-to-Unisave deed conveyed to Unisave the removal rights in section 13 of the master deed; and Lakewood became a successor in interest to those rights; and by operation of the foreclosure, it removed the units from the condominium, and obtained a fee simple estate to the undeveloped parcel. In other words, the title officer took the position that until the foreclosure, the phantom units were still part of the condominium.

The trial court granted Lakewood's motion, denied High Point's motion, dismissed the complaint, and declared that Lakewood is the fee simple owner of all lands foreclosed upon by

way of the 1980 final judgment, free from any requirements of the High Point master deed, by-laws, or the Act. In its oral decision, the trial court held that each unit, including unbuilt units, were subject to taxation, citing <u>Glenpointe Associates v. Township of Teaneck</u>, 10 <u>N.J. Tax</u> 288 (Tax 1988). The court found that High Point was not entitled to specific notice of the foreclosure complaint, and it was, in any event, time-barred from challenging the foreclosure. Finally, the court held that the developer possessed the right to remove unsold units from the condominium pursuant to section 13 of the master deed; Lakewood succeeded to those rights; and the in rem foreclosure "effectively removed this land from the condominium" pursuant to those removal rights.

## II.

We review the trial court's grant of summary judgment de novo, applying the same standard as the trial court. <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 <u>N.J.</u> 320, 330 (2010). We determine whether the moving party has demonstrated the absence of genuine issues of material fact, and whether the trial court has correctly determined that movant is entitled to judgment as a matter of law, owing no deference to the trial court's legal conclusions. <u>N.J. Dep't of Envtl. Prot. v. Alloway Twp.</u>, 438

N.J. Super. 501, 507 (App. Div.), certif. denied, ___ N.J. ___ (2015).

Interpretation of a master deed is also a question of law. Belmont Condo. Ass'n v. Geibel, 432 N.J. Super. 52, 86 (App. Div.), certif. denied, 216 N.J. 366 (2013). We exercise de novo review of such legal questions. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

## A.

We turn first to the issue of taxation and Lakewood's in rem foreclosure of the tax sale certificates. High Point argues that Lakewood was not empowered to impose taxes on, or to foreclose on, phantom units. Further, High Point asserts that its foreclosure complaint sought foreclosure on common property; High Point was entitled to notice as owner; and the failure of notice rendered the judgment void. We are unpersuaded.

Under the condominium form of ownership of real property, a "master deed provid[es] for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each such unit." N.J.S.A. 46:8B-3(h). A "unit" consists of "a part of the condominium property designed or intended for any type of independent use, having a direct exit to a public street or way or to a common element . . . leading to a public street or way." N.J.S.A. 46:8B-3(o).

"Each unit shall constitute a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property." N.J.S.A. 46:8B-4. A common element includes land described as such in the master deed; "yards, gardens, walkways, parking areas;" and "installations of all central services and utilities." N.J.S.A. 46:8B-3(d).

For purposes of taxation, each unit is taxed separately. N.J.S.A. 46:8B-19 (stating that "[a]ll property taxes . . . shall be separately assessed against and collected on each unit as a single parcel, and not on the condominium property as a whole"); see also Perth Amboy Gen. Hosp. v. City of Perth Amboy, 176 N.J. Super. 307, 312 (App. Div. 1980) (stating that "a condominium unit is for tax purposes an exclusive and separate unit despite the fact that by definition any condominium owner shares undivided interests in common with others"), certif. denied, 87 N.J. 352 (1981); Cigolini Assocs. v. Borough of Fairview, 208 N.J. Super. 654, 664-65 (App. Div. 1986) (stating that the borough was authorized to separately assess nineteen apartments converted to condominium form of ownership, notwithstanding that the plaintiff who converted the apartments retained ownership, and continued to rent the units because of poor market conditions). Likewise, the tax shall serve as a

"lien only upon the unit and upon no other portion of the condominium property."  N.J.S.A. 46:8B-19.[8]

In Glenpointe, the tax court held that under N.J.S.A. 46:8B-19, a unit does not need to include an apartment, and an assessment may involve only land.  Glenpointe, supra, 10 N.J. Tax at 294.  Furthermore, a condominium unit does not need to be completed before it is considered a unit for purposes of assessing responsibility for the proportionate share of the common elements.  Ibid.

> By statute [the Condominium Act], a condominium is created and established upon the filing of a master deed.  The statute also clearly provides that each condominium unit is separately assessed and that, appurtenant to and inseparable from each unit, is a proportionate share of the common elements.  Indeed, the statutory definition of a condominium unit includes the share of the common elements assigned to it.  The separate assessment of each unit contemplated by N.J.S.A. 46:8B-19 may involve land only, or it may reflect land plus partial improvements, such as footings and foundations.  Whatever the condition of the unit assessed, whether finished or

---

[8] We recognize that if a condominium association separately owns a parcel not recorded as a "common element," the association may be subject to separate taxation.  See Tower W. Apartment Ass'n v. Town of W. New York, 2 N.J. Tax 565, 569-74 (Tax 1981) (allowing separate taxation of parking facility not conveyed as part of the condominium unit and not within the purview of N.J.S.A. 46:8B-19), aff'd o.b., 5 N.J. Tax 478 (App. Div. 1982); see also Wendell A. Smith, Dennis A. Estis, & Christine F. Li, New Jersey Condominium & Community Association Law, § 2:4 at 21 (2015).

> unfinished, the unit's assigned share of the value of the common elements is included in the assessment.
>
> [Ibid.]

See also Tall Timbers, Inc. v. Vernon Twp., 5 N.J. Tax 299, 301-10 (Tax 1983) (addressing taxation of vacant land, campsites, with access to limited improvements, in a condominium campground community), overruled in part on other grounds by Twp. of W. Milford v. Van Decker, 235 N.J. Super. 1, 22 (App. Div. 1989), aff'd 120 N.J. 354 (1990).

High Point argues that Glenpointe only stands for the proposition that the value of a unit may involve only land, but not that a unit may consist only of undeveloped land. High Point notes that in Glenpointe, physical construction of the units had begun and was at various stages of completion. High Point contends the Act requires that a unit include improvements to land.

We disagree. A unit may exist under the Act, even if it does not yet have an actual use. A unit is defined as a part of property "designed or intended for any type of independent use." N.J.S.A. 46:8B-3(o) (emphasis added). The taxation of phantom units constitutes taxation on the basket of property rights

associated with the unit, including the unit's undivided interest in the common elements.[9]

Although we have found no case in New Jersey directly addressing the issue of taxation of phantom units, other jurisdictions have persuasively held that a developer is liable for taxes on unbuilt units. In <u>Saddle Ridge Corp. v. Bd. of Review</u>, 784 <u>N.W.</u>2d 527 (Wis. 2010), the court affirmed taxation of phantom units, and rejected arguments like those High Point presents here: that unbuilt units were not "units" under the state's condominium statute, and taxation of phantom units amounted to taxation of the vacant land that was part of the condominium's common elements. <u>Id.</u> at 536. The Wisconsin court endorsed the reasoning that a condominium is created when the declaration and plat are recorded. <u>Id.</u> at 540. The court reasoned that if unbuilt units are not taxable, a developer could be immune from taxation unless and until it commenced construction. <u>Id.</u> at 539. <u>See also</u> <u>Vill. at Treehouse, Inc. v. Prop. Tax Adm'r</u>, 321 <u>P.</u>3d 624, 625-28 (Colo. App. 2014)

---

[9] We need not address the appropriate means of valuing such property. <u>See</u> <u>N.J.S.A.</u> 54:4-23.

(approving taxation of development rights to construct unbuilt condominium units).[10]

Having concluded that Lakewood was empowered to tax the phantom units as individual properties, separate from the common elements of the condominium, we reject High Point's argument that it was entitled to separate notice of Lakewood's complaint to foreclose on the tax sale certificates.  Lakewood was obliged to send notice to the owner of record of the phantom units — Unisave.  See Twp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 19-20 (1977) (stating that the owner of record is entitled to actual notice of in rem foreclosure action).  Constructive notice through publication was sufficient notice to other parties, including High Point.  See N.J.S.A. 54:5-104.42.

High Point misplaces reliance on Wynwood Condo. Ass'n v. Twin Trees Dev. Co., 250 N.J. Super. 510 (Ch. Div. 1991).  That case involved the mistaken transfer to a third party of property — a drainage basin — that was contained in a condominium's master deed.  Id. at 514.  The third-party property owner of record failed to pay taxes.  Ibid.  Notice of the tax sale foreclosure action was provided to the owner of record, but not

---

[10] Our conclusion that phantom units are subject to taxation is also supported by the substantial authority in other states, concluding that phantom units are subject to assessments, which we discuss below.

the condominium.  Id. at 517.  In that case, in light of the initial error in the transfer of the property, the court held, given "the unusual set of facts," that the condominium was entitled to actual notice of the foreclosure action.  Id. at 519.  The distinction between that case and the one before us is obvious.  The foreclosure here did not involve property consisting of part of the common elements; the foreclosure pertained to the phantom units.  In light of the foregoing, we need not reach the issue whether High Point was time-barred from challenging the foreclosure judgment.

In sum, we discern no substantive basis to disturb the 1980 foreclosure judgment.  We therefore affirm the trial court's determination dismissing High Point's challenge to the judgment.

B.

However, we part company with the trial court's determination that as a consequence of its foreclosure judgment, Lakewood removed the phantom units from the condominium, and obtained fee simple ownership of the undeveloped parcel.  The court's conclusion was predicated on the developer's right to remove unsold units pursuant to section 13 of the master deed,

and the court's determination that the judgment of foreclosure was equivalent to a deed of revocation of the phantom units.[11]

The Act, as in effect in 1980 when Lakewood obtained title to the phantom units, authorized removal of condominium property upon the unanimous vote of the unit owners.

> Any condominium property may be removed from the provisions of this act by a deed of revocation duly executed by all unit owners or the sole owner of the property and the holders of all mortgages or other liens affecting all units and recorded in the same office as the master deed.
>
> [L. 1969, c. 257, § 26 codified at N.J.S.A. 46:8B-26.]

The statute was amended in 1985 to authorize removal with a vote of eighty percent of unit owners.  L. 1985, c. 3, § 1.  Once a deed of revocation is recorded, "the unit owners as of the date of recording of such deed shall become tenants-in-common of the

---

[11] The metes and bounds of the land that HPDC transferred to Unisave in the HPDC-to-Unisave deed constituted a large part of the land that HPDC previously subjected to condominium ownership in the master deed; it included land under both the phantom units and units that were ultimately completed and form part of the existing association.  Lakewood's argument presumes that the phantom units remained part of the condominium until it obtained foreclosure judgment on the tax sale certificates, and only then removed them from the condominium.  In other words, Lakewood does not contend that the HPDC-to-Unisave deed removed the phantom units, as well as those apartments built or unbuilt and contained in buildings 1 through 10, 22 through 50, and parts of 13 and 14, which were transferred by the deed.  We therefore need not address whether such a removal by the HPDC-to-Unisave deed would have been effective under the Act.

property unless otherwise provided in the master deed or deed of revocation." N.J.S.A. 46:8B-27.

We reject Lakewood's argument that section 26 of the Act pertains only to the termination of an entire condominium, and not the partial removal or withdrawal of units. The plain language of the provision, which refers to "[a]ny condominium property," encompasses any unit or units of property within the condominium. See State v. Rosecliff Realty Co., 1 N.J. Super. 94, 100 (App. Div. 1948) ("The word 'any' means '. . . one out of many . . .' and is given the full force of 'every' or 'all.'") (citation omitted), certif. denied, 1 N.J. 602 (1949).

Lakewood's reading would also lead to an absurd result. On one hand, unanimous consent would be required to remove an entire condominium property, to shield unit owners of the potential prejudicial impact of termination. On the other hand, according to Lakewood's reading, a developer may reserve unto itself the power — without any say from unit owners — to remove or withdraw all but a slight portion of an entire condominium, to comparable prejudice of the affected owners.[12]

_____

[12] We note that the amended Uniform Condominium Act § 1-103(11)(iv), 7 U.L.A. 504 (1980) (U.C.A.), empowers a developer to retain the power to "withdraw" real estate from a condominium. See ibid. (defining development rights to include right to withdraw property). However, the power is circumscribed, to protect the interests of unit owners. See
(continued)

The recitals in High Point's master deed also recognize that unit owners' approval was required for the partial removal of unsold units.  The prime consideration in determining the meaning of a deed is the intent of the parties.  Normanoch Ass'n v. Baldasanno, 40 N.J. 113, 125 (1963).  The recitals reflect the grantor's intent.  See generally Genovese Drug Stores, Inc. v. Conn. Packing Co., 732 F.2d 286, 291 (2d Cir. 1984) ("[A]n expression of intent in a 'whereas' clause of an agreement between two parties may be useful as an aid in construing the rights and obligations created by the agreement, but it cannot create any right beyond those arising from the operative terms

(continued)
U.C.A. § 2-105(8) (requiring a description of those areas subject to withdrawal); U.C.A. § 2-110(d) (governing the exercise of the power to withdraw, providing that if the declaration does not describe portions subject to withdrawal, then none of the real estate may be withdrawn once one unit has been conveyed; and if portions are subject to withdrawal, then no portion may be withdrawn after one unit in that portion has been conveyed).  New Jersey's statute does not expressly address the subject.  Consequently, if a developer is uncertain whether economic conditions will justify the complete build-out of a planned condominium, the developer may approach the project in phases, adding new sections to the master deed as conditions permit, rather than attempt to withdraw unbuilt or unsold units from the condominium.  See Smith, Estis & Li, supra, ch. 4 at 27-35 (discussing phasing of condominium projects); Lowell E. Sweet, Condominium Law and Practice, § 54.03(1)[d] (2015) (discussing issues raised by failure to complete a project, phantom units, and the desirability to eliminate phantom units by amending a condominium's declaration, although such amendment "can usually be adopted only by the unanimous consent of the developer and all unit owners").

of the document."); see also Monks v. Provident Inst. for Savings, 64 N.J.L. 86, 89 (Sup. Ct. 1899) (stating "parties to a deed or contract are estopped from contradicting or disputing these recitals, and they must be taken as true so far as they may aid and assist in the interpretation of the contracts").

The third "whereas" clause notes that the developer may want to remove unsold units if "it is not feasible to continue the development and sale of the Entire Tract." Apparently referring to N.J.S.A. 46:8B-26, the next recital states that "in order to so remove the Removed Units, the Condominium Act requires that a Deed of Revocation be executed by all unit owners . . . ." Thus, the recitals reflect the intent that unanimous consent of unit owners was required to remove any unsold units.

The substantive provision of the master deed, section 13, granted HPDC and its successors the irrevocable right to remove unsold units. But the removal power is not unqualified. Section 13 also includes the automatic grant of powers of attorney to execute deeds of revocation. The powers of attorney were granted "for the purpose of executing such Deed(s) of Revocation or other instrument necessary to effect the foregoing" — where "foregoing" refers to the preceding paragraph that addressed HPDC's right to remove unsold units.

24

Thus, HPDC attempted, through the master deed, to avoid the necessity of actually obtaining the unanimous consent of the unit owners. HPDC did so by including in the master deed a provision whereby unit owners automatically granted to HPDC, and its successors, irrevocable powers of attorney to exercise their votes. HPDC's purpose is set forth in the fifth recital clause. "[I]n order to facilitate the execution of any such Deed(s) of Revocation," HPDC reserved unto itself the "irrevocable right to remove the Removed Units . . . and . . . to execute any such Deed(s) of Revocation as attorney-in-fact for all such required parties without any further consent or the necessity for execution of any further instrument or document by any such party."

High Point questions the validity of the developer's retention of the right to remove property from the condominium. High Point argues the master deed provision violates section 26 of the Act, which requires unit owners' consent. The powers of attorney were clearly designed to avoid the stricture of section 26. Although not expressly addressed by High Point, section 7 of the Act may bar such powers of attorney. Section 7 states: "Any agreement contrary to the provisions of this act shall be void." N.J.S.A. 46:8B-7. Section 13 of the master deed may be deemed an agreement contrary to the Act.

Although we have found no case in New Jersey interpreting N.J.S.A. 46:8B-7, we note that the current version of the U.C.A. expressly provides that powers of attorney may not be used to evade statutory requirements. U.C.A. § 1-104. The comment recognizes the potentially abusive use of powers of attorney to evade consumer protections found elsewhere in the statute.

> One of the consumer protections in this Act is the requirement for consent by specified percentages of unit owners to particular actions or changes in the declaration. In order to prevent declarants from evading these requirements by obtaining powers of attorney from all unit owners, or in some other fashion controlling the votes of unit owners, this section forbids the use by a declarant of any device to evade the limitations or prohibitions of the Act or of the declaration.
>
> [U.C.A. § 1-104, comment 2.]

It is also unclear that Lakewood succeeded to the powers of attorney. It is apparent that the grant of the powers of attorney was presumed to run with each unit, such that the grant was binding against the unit owners' successors and assigns, and to avoid the necessity that subsequent owners execute powers of attorney. We presume that the provision stating the grants were "coupled with an interest in the subject matter" was intended to accomplish that result.

However, it is far from clear that the power to exercise the powers of attorney ran with Unisave's property, as Lakewood

A-2118-13T2

asserts, such that Lakewood succeeded to Unisave's rights when it obtained title to the phantom units. Unisave conceivably could have defaulted on taxes of only some of the phantom units. Under that scenario, accepting Lakewood's reasoning, both Unisave and Lakewood would possess the powers of attorney simultaneously with the potential of exercising them inconsistently — an absurd result.

However, we leave for another day the issue whether the powers of attorney violate the Act — which lacks the express reference found in the U.C.A. — or public policy. We also do not resolve whether, if enforceable, the powers of attorney ran with the land. Even if they were enforceable, and ran with the land, they were not self-effectuating.

We thus differ with the trial court, which concluded that the phantom units were removed by the entry of the foreclosure judgment. The Act requires the filing of a deed of revocation executed by the unit owners or, arguably, their attorneys in fact. See N.J.S.A. 46:8B-26. No such deed was filed.

The foreclosure judgment does not suffice. The judgment does not mention a "deed of revocation," or state expressly that property was being removed from the condominium. The foreclosure judgment includes no metes and bounds of the

property obtained.[13]    It refers to each separate unit by its building and apartment number.  We thus conclude that Lakewood currently holds title to the phantom units, which remain integrated with the entire tract as described in the master deed.  Lakewood may choose to file a deed of revocation, to secure its right to the land, removed from the association's common area.  If Lakewood does so, then the issue of the enforceability of the powers of attorney may be joined.

C.

Finally, we address High Point's argument that if Lakewood does hold title to the phantom units, then it is liable for assessments since 1980.[14]    Although no New Jersey case has apparently addressed the issue, liability for assessments is consistent with liability for taxation, which we discussed

---

[13] The metes and bounds of property identified in the HPDC-to-Unisave deed does not separately describe the undeveloped parcel; rather, it describes all the land covered by the master deed's metes and bounds, except for a portion in the northwest corner, where, apparently, the units that were not transferred were located.

[14] In its September 2012 complaint, High Point similarly alleged that Lakewood's liability reached back to December 5, 1980. Yet, in its prayer for relief, it sought judgment only for slightly over six years of assessments, starting January 1, 2006, plus interest.  High Point did so apparently in recognition of the six-year statute of limitations.  See N.J.S.A. 2A:14-1.  However, High Point does not explain the basis of its claim for assessments between January and September 2006.

above.  The Act provides that "common expenses shall be charged to unit owners" without limitation to owners of partially built or unbuilt units.  N.J.S.A. 46:8B-17.  Department of Community Affairs regulations, pursuant to the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56, contemplate assessments on units "under development."  See N.J.A.C. 5:26-8.6(b) ("When the association has made a common expense assessment, the assessment shall be assessed against the units individually owned and under development in proportion to the benefit derived by the unit from the items included in the budget.").

There is also persuasive authority from other jurisdictions, applying their respective statutes, for the proposition that phantom units are subject to assessments.  See Mountain View Condo. Homeowners Ass'n v. Scott, 883 P.2d 453, 457 (Ariz. Ct. App. 1994) (recognizing view that U.C.A. does not "distinguish between completed and uncompleted units in . . . levying assessments for maintenance, repair and administrative expenses attributable to the common elements"); Hatfield v. La Charmant Home Owners Ass'n, 469 N.E.2d 1218, 1221-22 (Ind. Ct. App. 1984) (rejecting argument that "habitability" must precede assessment); Pilgrim Place Condo. Ass'n v. KRE Props., Inc., 666 A.2d 500, 502 (Me. 1995) (stating "[n]o provision of the Act

requires any distinction between built and unbuilt units in the assessment for common expenses"); Bradley v. Mullenix, 763 S.W.2d 272, 275-77 (Mo. Ct. App. 1988) (stating that neither the statute nor the condominium's declaration distinguished between completed and unfinished units, and holding that developer was liable for proportionate share of expenses attributable to unfinished units); Centennial Station Condo. Ass'n v. Schaefer Co. Builders, Inc., 800 A.2d 379, 384 (Pa. Commw. Ct. 2002) (following Mountain View and Pilgrim Place); cf. Rafalowski v. Old Cnty. Rd., Inc., 719 A.2d 84, 87-88 (Conn. Super. Ct. 1997) (permitting a lesser assessment fee for unfinished units), aff'd o.b., 714 A.2d 675, 675-77 (Conn. 1998).[15]

Pilgrim Place is particularly noteworthy as it involved a bank's foreclosure on a developer's interest in a partially completed condominium development. Pilgrim Place, supra, 666 A.2d at 501. Defendant KRE acquired title at the foreclosure sale to twenty-four unbuilt units out of a total of forty-eight units. Ibid. KRE built sixteen units during its control period. Id. at 501-02. It paid no assessments on the unbuilt

---

[15] We recognize this is not the unanimous view of other jurisdictions. See, e.g., Meghan Coves Ass'n v. Meghan Coves Prop., Inc., 50 P.3d 226, 230-31 (Okla. Civ. App. 2002) (finding that under Oklahoma statutory law, the establishment of a unit requires construction of a unit "rather than an idea expressed on paper").

units.  Id. at 502.  The court held that it was liable for assessments associated with the unbuilt units until its control period ended, at which time the right to develop the unbuilt units expired, according to the condominium declaration.  Ibid.

Nonetheless, a condominium association may be barred by principles of waiver or laches from imposing retroactive assessments.  See Springside Land Co. v. Bd. of Managers of Springside Condo. I, 869 N.Y.S.2d 101, 105-06 (App. Div. 2008) (finding that a board waived its right to assess common charges on unfinished units by waiting ten years to impose them, but stating that waiver can be withdrawn as it pertains to the right to assess future common charges).  In any event, it is unclear that assessments on phantom units should be equal to those imposed on finished units.  See N.J.A.C. 5:26-8.6(b) (stating that assessments on "units individually owned and under development" shall be "in proportion to the benefit derived by the unit") (emphasis added); see also Ocean Club Condo. Ass'n v. Gardner, 318 N.J. Super. 237, 240 (App. Div. 1998) (quoting approvingly trial court decision stating that with respect to units under development, "'[i]n such a setting, it would be logical and equitable to only assess such units to the extent that they benefit from the common elements which, during the development stage, would understandably be less than for those

units that are complete'"). We remand to the trial court to address High Point's claim to assessments.

D.

To summarize, we conclude that Lakewood was empowered to tax the phantom units, and to foreclose on the tax sale certificate after the taxes were unpaid. However, Lakewood's right to remove the phantom units required the unanimous consent of the unit owners. We question whether the powers of attorney are valid or were transferred with the phantom units obtained through foreclosure. However, even if their validity and transfer are assumed, they are not self-executing. Lakewood had not executed or filed a deed of revocation; and the foreclosure judgment does not suffice.

Consequently, Lakewood remains the owner of the phantom units until an enforceable deed of revocation is filed. Although Lakewood is potentially subject to assessments, its liability for past assessments may be barred by principles of waiver or laches; in any event, Lakewood's liability is limited by the statute of limitations.

Affirmed in part, reversed in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2118-13T2