**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2114-23

JOSEPH B. TUZZEO and
MARGARET I. TUZZEO,

     Plaintiffs,

v.

FERN A. STEELE, an alleged
incapacitated person and GARY T.
STEELE, individually and as attorney
in fact,

     Defendants,

and

ESTATE OF FERN A. STEELE,
by her EXECUTOR, GARY T.
STEELE, f/k/a FERN A. STEELE,
an alleged incapacitated person,
by GARY T. STEELE, her attorney
in fact,

     Third-Party Plaintiff-Appellant,

v.

JANE A. WISNER, MATTHEW L.
WISNER, BARRY SUNAR, LAURA

FINELLI, and RE/MAX
COMPETITIVE EDGE,

      Third-Party Defendants,

and

CHANGEBRIDGE AT MONTVILLE
CONDOMINIUM ASSOCIATION, INC.,
STEVE SAMITT, LARRY KORNREICH,
RON LEEDS, HOWARD RAUCHBERG,
MIKE EDWARDS, JOE ANZALONE,
THOMAS TREGONING, ASSOCIA
COMMUNITY MANAGEMENT CORP.,
and GERARD O'NEILL,

      Third-Party Defendants-Respondents,

_____

Submitted May 21, 2025 – Decided June 23, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000041-21.

Gary T. Steele, attorney for appellant.

Marks, O'Neill, O'Brien, Doherty & Kelly, PC, attorneys for respondents (Noreen P. Kemether and Bernadette Irace, on the brief).

PER CURIAM

A-2114-23

Third-party plaintiff Estate of Fern A. Steele (Estate) by her executor and son, Gary T. Steele, (collectively, Steeles)[1] appeal from a December 14, 2023 order granting summary judgment to third-party defendants Changebridge at Montville Condominium Association, Inc. (Association), the Association's Board of Directors, Steve Samitt, Larry Kornriech, Ron Leeds, Howard Rauchberg, Mike Edwards, Joe Anzalone, Thomas Tregoning (Board), the Association's property management company, Associa Community Management Corp., and the Association's property manager, Gerard O'Neill (collectively, Changebridge defendants) and a February 2, 2024 order denying the Estate's motion for reconsideration. We affirm both orders.

We recite the facts from the motion record. This case involves the sale of a condominium unit (Property) in the Changebridge at Montville condominium community (Changebridge).

The Association is a non-profit corporation responsible for enforcing Changebridge's Master Deed and Bylaws. The Master Deed created three categories of property within Changebridge: units, limited common elements,

---

[1] Because third-party plaintiffs share the same last name, we refer to them by their first names. No disrespect is intended.

Additionally, Fern died during the pendency of the litigation. After Fern's death in December 2021, Gary continued the litigation in his capacity as the executor of Fern's estate.

and general common elements. Under the Master Deed, a unit is a home "designated and intended for independent use as a residential dwelling, and having a direct exit to a [c]ommon [e]lement[] leading to a public street or way." Limited common elements are for the exclusive use of one or more specified units. The Master Deed identifies three limited common elements: (1) "any driveway providing access from a roadway or driveway . . . to a garage appurtenant to a [u]nit"; (2) sidewalks "providing access from a roadway or driveay . . . to a [u]nit"; and (3) porches, patios, steps, and stoops "to which there is direct access from . . . any [u]nit." All other property within Changebridge is considered a general common element available for use by all residents.

The Bylaws govern the Association and grant the Board the "powers and privileges necessary for the administration of the affairs, business and property of the Association." The Bylaws confer upon the Board the power to "[a]dopt, distribute, amend, and enforce reasonable rules and regulations governing the use and operation of the condominium property." The Board also has "the power . . . to enforce the terms of the governing documents of [Changebridge] including the Master Deed. . . and these By[][l]aws." The Bylaws further provide that, "[u]nless acting in bad faith, neither the Board as a body nor any Director, officer or committee member shall be personally liable to any unit

owner in any respect for any action or lack of action arising out of the execution of his office." Additionally, the Bylaws state: "Each unit owner shall be bound by the good faith actions of the Board, officers and committee members in the execution of their duties."

The Association adopted Rules and Regulations (Rules) for Changebridge residents. The Rules restrict parking to "garages, driveways, and specifically designated parking areas. . . . Garages and driveways must be used for parking before utilizing a parking pad."

The Property includes a driveway leading from the road to the garage. Adjacent to the right-hand side of the Property's driveway is an extended paved area sized to accommodate two cars (Disputed Parking Area). In 2020, the Steeles listed the Property for sale with a real estate agent. Because the agent did not know if the Disputed Parking Area was included as part of the Property, the agent asked the Association's property manager for clarification. The property manager responded the Disputed Parking Area was a general common element. In January 2021, the real estate agent changed the sales listing to include the Disputed Parking Area as designated parking for the Property. According to the real estate agent, she made the change because the property manager called and explained he was incorrect in his initial response.

5

In February 2021, plaintiffs Joseph and Margaret Tuzzeo (buyers) entered into a contract to purchase the Property for $534,900. The closing was set for March 9, 2021. At a pre-closing walkthrough, buyers found unfamiliar cars parked in the Disputed Parking Area. The cars belonged to Fern's neighbors. Gary, on Fern's behalf, asked the neighbors to move their cars. The neighbors refused to do so. A Board member gave buyers warning stickers to place on the neighbors' cars. The Association did not take any action to remove the neighbors' cars from the Disputed Parking Area.

After discovering the issue with the Disputed Parking Area, buyers declined to proceed with the purchase of the Property. In April 2021, buyers filed suit against the Steeles for specific performance under the real estate contract and removal of the neighbors' cars from the Disputed Parking Area.

Before filing an answer to buyers' complaint, Gary, on behalf of Fern, demanded the Board deem the Disputed Parking Area a limited common element. The Board referred the matter to its attorney. In an email to Gary, the Board's attorney advised the Disputed Parking Area was a general common element. Counsel also inquired if Fern wished to pursue Alternative Dispute Resolution (ADR) consistent with the Bylaws.

6 A-2114-23

Three days later, Gary filed a counterclaim against the buyers and a third-party complaint against (1) the neighbors for trespass and tortious interference; (2) the Changebridge defendants for breach of fiduciary duty; and (3) the realty company and real estate agent (collectively, Realtor defendants) for negligence.

The Estate moved for summary judgment against the buyers, neighbors, and Changebridge defendants. The neighbors and Changebridge defendants moved for summary judgment against the Estate. The buyers moved for partial summary judgment against the Estate seeking a judicial determination that the Disputed Parking Area was a limited common element.

In their motion for summary judgment, the Changebridge defendants argued the business judgment rule and Bylaws precluded the imposition of liability in the absence of bad faith. They asserted the Estate failed to prove bad faith.

The motion judge heard argument on December 12, 2023. Two days later, he issued a twenty-nine-page written decision granting summary judgment to the neighbors and Changebridge defendants, but denying summary judgment to the Estate and buyers.

In granting summary judgment to the Changebridge defendants, the judge found the Estate "fail[ed] to provide evidence that the business judgment rule is

7

applicable to the Association's conduct in the instant matter." The judge explained the Bylaws "contain an explicit exculpatory clause providing that the Board, unless acting in bad faith, shall not be personally liable to any unit owner." He determined "the evidence indicate[d] that the Association acted in good faith and sought the advice of its counsel once it became aware of the issues involving the Disputed Parking Area. There was no evidence that their conduct involved fraud, self-dealing, or some other unconscionable act." Because the business judgment rule and Bylaws precluded a finding of liability against the Changebridge defendants in the absence of bad faith, which the Estate failed to demonstrate, the judge granted summary judgment in favor of the Changebridge defendants and dismissed the third-party complaint.

In denying partial summary judgment to buyers, the judge concluded:

> [T]he plain language of the Master Deed, as well as the photographs submitted with the parties' motions, demonstrate that the Disputed Parking Area is a [g]eneral [c]ommon [e]lement. Article 11 of the Master Deed provides that "any driveway providing access from a roadway on the Property to a garage appurtenant to a [u]nit shall constitute a [l]imited [c]ommon [e]lement for the exclusive use of said [u]nit." A plain reading of this provision demonstrates that the language refers to the driveway leading to the garage, not the additional parking spaces in the Disputed Parking Area. The Master Deed specifically references a driveway leading to a garage that is appurtenant to a unit. The Disputed Parking Area does not lead to a garage that is

appurtenant to a unit. Thus, the Disputed Parking Area falls outside of the definition of a [l]imited [c]ommon [e]lement driveway. Accordingly, . . . the Disputed Parking Area is not a [l]imited [c]ommon [e]lement.

The Estate moved for reconsideration, which the judge denied in a February 2, 2024 order. The Estate appealed the December 14, 2023 order granting summary judgment in favor of the Changebridge defendants and the February 2, 2024 order denying its motion for reconsideration. During the pendency of the appeal, the Estate settled the claims with the neighbors, buyers, and Realtor defendants.

In April 2024, the Estate sold the Property to a third-party buyer for $772,500, almost $240,000 more than the contract with buyers. Based on the sale of the Property, the Changebridge defendants moved to dismiss the appeal as moot. We denied the motion in an August 1, 2024 order.[2]

---

[2] "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). "A case is moot if the disputed issue has been resolved." Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004).

Here, the sale of the Property did not render the appeal moot. The Estate argues it is entitled to damages because the Changebridge defendants breached their fiduciary duty by failing to remove the neighbors' cars. Thus, the Estate has a continuing interest to an award of damages and the Changebridge defendants have an interest in a determination they did not breach any fiduciary duty rendering them liable to the Estate for damages.

A-2114-23

We review orders on summary judgment motions de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). There is no genuine issue of material fact where the record "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Once the moving party meets its burden, "the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). But the opposing party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. "Bare conclusory assertions, without factual support in the record, will not defeat a meritorious application for summary judgment." Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012) (citing Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999)).

A-2114-23

We review motions for reconsideration for abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015); see also D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). Abuse of discretion arises when a decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).

The Estate argued the Changebridge defendants breached a fiduciary duty owed to them. A claim for breach of fiduciary duty is "essentially one sounding in negligence." Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 115 (App. Div. 2011). A plaintiff must prove (1) the parties had a fiduciary relationship, (2) the defendant breached a fiduciary duty owed to the plaintiff, (3) proximate cause, and (4) actual damages. See F.G. v. MacDonell, 150 N.J. 550, 564 (1997); see also Townsend v. Pierre, 221 N.J. 36, 51 (2015).

The Condominium Act (Act), N.J.S.A. 46:8B-1 to -38, governs "the creation and regulation of condominiums." Fox v. Kings Grant Maint. Ass'n, Inc., 167 N.J. 208, 218 (2001). The Act allows for the formation of condominium associations, which "shall be responsible for the administration and management of the condominium and condominium property, including but

not limited to the conduct of all activities of common interest to the unit owners." N.J.S.A. 46:8B-12. A condominium association's "board of directors, trustees or other governing body have a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders." Siller v. Hartz Mountain Assocs., 93 N.J. 370, 382 (1983). The fiduciary relationship between a condominium association and unit owners "includes the duty to preserve and protect the common elements and areas for the benefit of all its members." Kim v. Flagship Condo. Owners Ass'n, 327 N.J. Super. 544, 550 (App. Div. 2000).

Unit owners have a right to use common elements "except to the extent that the master deed provides for limited common elements." N.J.S.A. 46:8B-6. Limited common elements are "for the use of one or more specified units to the exclusion of other units." N.J.S.A. 46:8B-3(k).

The Estate argued the Disputed Parking Area was a limited common element available for the Property's exclusive use and the Changebridge defendants had a duty to remove the neighbors' cars. The motion judge disagreed, finding the plain language of the Master Deed indicated the Disputed

Parking Area was not a limited common element, but rather a general common element.

The interpretation of a master deed is a question of law reviewed de novo. High Point at Lakewood Condo. Ass'n, Inc. v. Township of Lakewood, 442 N.J. Super. 123, 133 (App. Div. 2015). Courts apply basic principles of contract interpretation to master deeds. See Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003) ("[Deed restrictions] must be analyzed in accordance with the principles of contract interpretation . . . .").

"Courts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Devs., Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)). "The plain language of the contract is the cornerstone of the interpretive inquiry. . . ." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).

Here, the Master Deed lists three limited common elements: (1) sidewalks leading from a unit to the roadway; (2) stoops, porches, and patios with direct

access to a unit; and (3) "driveway[s] providing access from a roadway . . . to a garage appurtenant to a [u]nit." As the judge found, the Disputed Parking Area is not a sidewalk, patio, or driveway leading to a garage. Therefore, the Disputed Parking Area is not a limited common element.

On appeal, the Estate argues the entire driveway, including the Disputed Parking Area, is a limited common element for the exclusive use of the Property. However, the Master Deed fails to designate "every driveway" as a limited common element. Rather, the Master Deed states "any driveway <u>providing access from a roadway . . . to a garage appurtenant to a [u]nit</u>" is a limited common element. (emphasis added).

The Disputed Parking Area does not lead to a garage. Therefore, by definition under the Master Deed, the Disputed Parking Area is not a limited common element. Thus, the Changebridge defendants did not owe the Estate a duty to preserve and protect the Disputed Parking Area for the Property's exclusive use. Even if the Disputed Parking Area was a limited common element, which it is not, the Changebridge defendants did not breach any fiduciary duty owed to the Estate. The Bylaws and business judgment rule limit a claim for breach of fiduciary duty to bad faith conduct. The Estate failed to proffer any evidence of bad faith by the Changebridge defendants.

14

"Exculpatory agreements have long been disfavored in the law because they encourage a lack of care." Hojnowski v. Vans Skate Park, 187 N.J. 323, 333 (2006). Such agreements are "subjected to close judicial scrutiny." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 303 (2010). An exculpatory clause limiting liability is enforceable if: "(1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable." Gershon v. Regency Diving Ctr., Inc., 368 N.J. Super. 237, 248 (App. Div. 2004). "[A]n exculpatory release agreement must, on its face, reflect the unequivocal expression of the party giving up his or her legal rights that this decision was made voluntarily, intelligently and with the full knowledge of its legal consequences." Id. at 247.

A release from tort liability arising "from intentional or reckless conduct violates public policy." Hojnowski, 187 N.J. at 333. But "a promise not to sue for future damage caused by simple negligence may be valid." Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 580 (App. Div. 1955).

Here, the Bylaws contained an exculpatory clause providing:

> Unless acting in bad faith, neither the Board as a body
> nor any Director, officer or committee member shall be

15

personally liable to any unit owner in any respect for any action or lack of action arising out of the execution of his office. Each unit owner shall be bound by the good faith actions of the Board, officers and committee members in the execution of their duties.

On appeal, the Estate does not contest the validity of the exculpatory clause in the Bylaws. Rather, it argues the Changebridge defendants acted in bad faith. Bad faith is "a thing . . . done dishonestly" that "contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will." Lustrelon, Inc. v. Prutscher, 178 N.J. Super. 128, 144 (App. Div. 1981) (quoting New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J. Eq. 264, 277 (Ch. 1934)). Bad faith requires "a showing of some indicia of dishonest conduct." Ibid. (citation omitted).

The Estate alleges the Changebridge defendants acted in bad faith by (1) providing warning stickers to buyers but failing to take further action; (2) failing to engage in ADR; and (3) "purposely forc[ing] [the Steeles] to incur damages." None of these allegations rise to the level of bad faith conduct.

Having reviewed the record, we are satisfied the Estate failed to demonstrate the Changebridge defendants knowingly and dishonestly declined to enforce the Master Deed or Bylaws to "purposely" cause injury.

16

Upon learning of the issue related to the Disputed Parking Area, the Board referred the matter to its attorney. The Board's attorney responded the Disputed Parking Area was a general common element consistent with the provisions in the Master Deed and Bylaws. The Board reasonably relied on that legal opinion in good faith. Accordingly, the Estate failed to show the Changebridge defendants acted in bad faith by failing to remove the neighbors' cars from the Disputed Parking Area.

Similarly, the Changebridge defendants' purported failure to engage in the ADR process did not support a finding of bad faith. Under N.J.S.A. 46:8B-14(k), associations must "provide a fair and efficient procedure for the resolution of housing-related disputes between individual unit owners and the association, . . . which shall be readily available as an alternative to litigation." Participation in ADR under N.J.S.A. 46:8B-14(k) "is not a prerequisite to suit." Finderne Heights Condo. Ass'n, Inc. v. Rabinowitz, 390 N.J. Super. 154, 163 (App. Div. 2007). Either party may seek ADR after a suit is filed and move to "dismiss the [lawsuit] without prejudice." Id. at 164.

On May 10, 2021, the Board's attorney asked the Steeles to "confirm [they] wish[ed] to have ADR with all parties, and [the Association] w[ould] reach out to start scheduling ADR." There is no evidence in the record

indicating the Steeles responded to this inquiry. Rather, the record reflects the Estate filed a third-party complaint against the Changebridge defendants just three days after the Board's attorney offered ADR. Even after filing the third-party complaint, the Estate could have participated in ADR but did not do so. The failure of the Estate to participate in ADR when offered does not support a finding that the Changebridge defendants acted in bad faith.

On this record, we are satisfied the Bylaws contain a valid exculpatory clause. Thus, the Changebridge defendants are not liable to the Estate for any action or inaction absent bad faith. However, the Estate failed to demonstrate any action or inaction by the Changebridge defendants constituted bad faith conduct.

Nor did the judge err in declining to find the Changebridge defendants liable to the Estate under the business judgment rule. A condominium association's decisions are "reviewed by a court using the same business judgment rule which governs the decisions made by other types of corporate directors." Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426 (App. Div. 1994). "The business judgment rule has its roots in corporate law as a means of shielding internal business decisions from second-guessing by the courts." Green Party of N.J. v. Hartz Mountain Indus., Inc., 164 N.J. 127, 147

(2000). "Under the rule, when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions brought by others who have an interest in the business entity." Ibid.

"The business judgment rule creates 'a rebuttable presumption' that the actions of a [b]oard are valid." Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 136 (App. Div. 2018) (quoting In re PSE & G S'holder Litig., 173 N.J. 258, 277 (2002)). The challenging party must show the board's action was unauthorized, fraudulent, self-dealing, or unconscionable. Id. at 135 (quoting In re PSE & G S'holder Litig., 173 N.J. at 277). "If a challenger sustains that initial burden, . . . 'the burden of proof shifts to the defendant or defendants to show that the transaction was, in fact, fair to the corporation.'" Id. at 136 (quoting In re PSE & G S'holder Litig., 173 N.J. at 277).

Here, the Bylaws authorized the Board to "[s]eek/obtain advice from . . . lawyers," and "adopt . . . and enforce reasonable rules and regulations governing the use and operation of . . . the common elements." The Board adhered to the Bylaws in asking its attorney for legal advice regarding the Disputed Parking Area and enforcing the status of the Disputed Parking Area as a general common element. Because the Estate failed to demonstrate the Board acted in bad faith,

it failed to rebut the presumption of validity governing the Board's conduct, precluding a finding of liability against the individual Board members.

Even if we agreed the Estate demonstrated the Changebridge defendants breached a fiduciary duty, which we do not, it failed to prove actual damages. Proof of actual damages is an "essential element" in a negligence action. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 45 (1984). "Actual damages are . . . real and substantial as opposed to speculative." Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993).

Here, the Estate claimed the failure of the Changebridge defendants to remove the neighbors' cars from the Disputed Parking Area rendered it unable to complete the real estate closing with buyers. As a result of the inability to convey the Property to buyers, the Estate alleged $65,533.94 in damages associated with unpaid dues, assessments, and other costs.

The Estate contracted to sell the Property to buyers for $534,900. During the pendency of the litigation with buyers and the Changebridge defendants, the Estate sold the Property to a third party for $772,500. By selling the Property for more than the original contract price with buyers, the Estate received an additional $237,600. We are satisfied the Estate actually profited from the

Changebridge defendants' alleged breach of fiduciary duty and therefore suffered no actual damages.

For the following reasons, we discern no error in the granting of summary judgment in favor of the Changebridge defendants. Because the judge properly granted summary judgment to the Changebridge defendants, the Estate's appeal from the denial of its motion for reconsideration is without merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

21                                                        A-2114-23